[No. A118143. First Dist., Div. Four. Apr. 17, 2008.]

CAREN BUFIL, Plaintiff and Appellant, v.
DOLLAR FINANCIAL GROUP, INC., Defendant and Respondent.

1194

**Counsel**

Qualls & Workman, Daniel H. Qualls and Robin G. Workman for Plaintiff and Appellant.

Paul, Hastings, Janofsky & Walker, Michael A. Hood, James P. Carter and Brigham M. Cheney for Defendant and Respondent.

**Opinion**

**REARDON, J.**—On the heels of the denial of class certification against employer and respondent Dollar Financial Group, Inc. (Dollar), in a suit alleging violation of meal and rest break labor laws, appellant Caren Bufil pursued class certification in a new suit which significantly narrowed the

class definition. Relying on the doctrine of collateral estoppel, the trial court granted judgment on the pleadings in favor of Dollar. Also relying on this doctrine as well as traditional concerns relevant to the issue of certification, the court denied Bufil's motion for class certification. We reverse.

## I. FACTUAL BACKGROUND

### A. *Dollar's Operations and Policies*

Dollar provides check cashing and Western Union services as well as consumer lending, through its 130 retail stores in California. Products and services vary from store to store, and in turn this variety impacts the number and duration of employee transactions in each store, as does variation in store location and hours of operation. Each retail store has its own manager who is responsible for hiring employees and staffing the store and setting employee work schedules, including meal and rest breaks. There is no staffing guideline or policy establishing the level of staffing. Rather, each manager determines staff based on the services offered, volume and seasonal fluctuation in customer demand.

Scheduling conflicts occur that sometimes prevent an employee from being able to leave a store for an off-duty meal break. In particular, this may occur if the employee (1) is the only employee in the store on a particular shift; or (2) is working solely with a newly hired employee who is not certified to cash checks or transact business without supervision. According to Melissa Soper, the vice-president of human resources for Dollar at the relevant times and the person most knowledgeable (PMK) about Dollar's meal and rest break policies, a single employee working a shift or supervising a new employee when no one else is on duty is *not authorized* to do any of the following for 10 consecutive minutes every four hours: close the store; tell customers they are off duty; ignore customer traffic or stop monitoring customer traffic and go off duty; or leave his or her teller station. In other words, while working a shift as a single employee or a single employee with an in-store trainee, the employee is on duty at all times.

Industrial Welfare Commission wage order No. 4-2001 (Wage Order No. 4-2001) governs an employer's obligation for providing meal and rest breaks to hourly employees. It provides: "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. Unless the employee is

relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time." (Cal. Code Regs., tit. 8, § 11040, subd. 11(A) (section 11040).)

In 2001 Dollar introduced the "California Meal Agreement" in an attempt to accommodate in a lawful manner the occasions when employees were not afforded an off-duty meal break. The agreement is included in all "new hire" paperwork for California employees, and Dollar's human resources policy manual provides that these employees will sign the agreement when they complete that paperwork. The agreement states that (1) Dollar and the employees acknowledge that the nature of the business may prevent employees from being relieved of all duties during meal periods; (2) Dollar and the employees agree that an employee may take an on-duty meal break, and be paid accordingly; and (3) the employees may revoke their right to have the meal break be deemed "on duty" by giving 24 hours' written notice to a supervisor.

Dollar introduced an updated meal break policy effective September 2003. This policy reiterates that hourly employees sign the meal break agreement at the time of hire, consenting to an on-duty meal break in the event they are unable to be relieved of duty during a meal break. To clarify the circumstances necessitating an on-duty meal break, the revised policy spells out that the only acceptable circumstances are that the hourly employee (1) is the only employee in the store working during the entire work shift; and (2) is working with only one other employee who has been employed less than 90 days and is not certified to transact business alone. An e-mail to store managers in June 2006 reiterated this policy.

Coinciding with the revised policy, in August 2003 Dollar implemented a timekeeping system—called the MMTimesheet—which requires full-time, hourly employees to take and record off-duty meal breaks, or indicate from three options presented why they were not able to do so. The three options are: (1) only employee on duty; (2) supervising one new employee; or (3) meal break not taken (describe in comments section). All California stores received a technical bulletin which described these procedures.

 Concerning rest breaks, Wage Order No. 4-2001 states that every employer must "authorize and permit all employees to take rest periods . . . .

The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3½) hours." (§ 11040, subd. 12(A).)

The Dollar policy at the relevant times did not require consecutive 10-minute breaks. Rather, it permitted a "net" 10 minutes of time that could be broken up during the course of a day. A 2002 Division of Labor Standards Enforcement opinion letter iterates that the "net" 10 minutes had to be consecutive. And, as stated above, Dollar does not authorize single employees working a single shift or supervising a trainee to close, tell customers they are off duty, ignore or stop monitoring customer traffic, or otherwise relieve the employee of all duty for 10 consecutive minutes every four hours in order to accommodate lawful rest breaks.

Further, according to Melissa Soper, Dollar does not notify its employees that they are authorized and permitted to take a 10-consecutive-minute off-duty rest break every four hours. Nor does Dollar instruct supervisory personnel to take steps to provide employees with the opportunity to take the required rest breaks. The onus is on the employer to clearly communicate the authorization and permission to its employees. (*Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 963 [35 Cal.Rptr.3d 243].)

Employers who do not comply with the meal and rest break rules "shall pay" the employee one hour of pay at the employee's regular rate of compensation for each workday that the meal period or rest period is not provided. (§ 11040, subds. 11(B), 12(B).) Dollar did not pay hourly employees extra compensation for missed rest or meal periods.

B. *Stanley Chin/Loc Nguyen[1] Lawsuit*

In May 2003 hourly employee Stanley Chin sued Dollar, claiming to represent a class comprised of all California-based hourly store employees who were (1) employed for a period of more than five hours without a meal period of not less than 30 minutes, and/or (2) not authorized or permitted to take a rest break for every four hours of work. (*Chin v. Dollar Financial Group* (Super. Ct. L.A. County, 2003, No. BC295343).) The class certification motion defined the class as "all hourly store employees employed by

---

[1] The trial court determined that Chin was an inadequate representative. Therefore, after the notice of appeal was filed in his case, the parties agreed to an amended complaint which substituted Loc Nguyen as the named plaintiff and class representative.

[Dollar] in California at any time [since May 7, 1999, to the present] and who were denied meal periods and rest breaks in compliance with California law." Chin alleged causes of action under the unfair competition law (UCL),[2] as well as for violation of the Labor Code and wage orders. Chin complained that he and putative class members were illegally denied "off-duty" rest and meal periods, asserting that the type of work he and the putative class members performed was such that they could and should have been, but were not, relieved of all duties during those periods. Supporting his motion, Chin presented declarations of potential class members who asserted that Dollar forced them to execute a meal agreement as a condition of employment.

The trial court denied class certification in the *Chin/Nguyen* case. Among other matters, the court determined there was insufficient commonality: "Based on the evidence presented, Defendant's [liability] to every putative class [member] may not be determined by the proffered facts, [supposedly] common to the class. For example: (1) Plaintiff contends that the core of this action is Defendant's uniform policy concerning meal periods and rest breaks, yet there is no evidence presented by Plaintiff that any uniform policy or training with regard to meals and breaks existed prior to the adoption of the California Meal Agreement executed by Plaintiff in 2002. In order to maintain class adjudication, the Plaintiff would have to establish a uniform policy of violation. (2) After 2002 any [putative] class member that executed the Meal Agreement did not have a claim against Defendant for a meal break violation unless Defendant neglected to compensate them for their on-duty meal break. (3) Defendant's PMK has testified . . . that the applicable wage and hour laws were posted at the jobsite with regard to meal breaks and that the Meal Agreement was capable of revocation in writing, thus, absent proof of a canned presentation by Defendant to each employee, each individual employee is given the opportunity to interpret the language of the posted wage and hour sign as well as the language of the Meal Agreement differently, thus thwarting Plaintiff's argument of common liability. (4) Defendant's Meal Agreement is within California law as such the existence of and signature of said agreement [is] not [in] automatic violation of any California law as Plaintiff appears to argue. In addition, the time card evidence provided by the Defendant to refute the arguments contained in the [putative] class Declarations . . . shows that the [same putative] class members frequently took off-the-clock 30 minute meal breaks throughout the class period. [¶] Based upon the foregoing, there are no apparent issues common to each [putative] class member that can be the basis for common liability."

---

[2] Business and Professions Code section 17200 et seq.

The Court of Appeal affirmed, holding that the lower court properly could rule that the action was not suitable for class treatment because common questions of fact and law did not predominate over individualized issues. (*Nguyen v. Dollar Financial Group* (May 18, 2006, B184137 [nonpub. opn.].) Elaborating, the court explained that each employee would have to testify as to his or her own understanding of rights under the meal agreement; each employee would have to explain why he or she did or did not take breaks notwithstanding evidence to the contrary in their written time cards; and an additional factual layer existed concerning the extent to which employees were forced to submit false time sheets. The trial court also could conclude correctly that class treatment would not be beneficial to the judicial process. Finally, the reviewing court disagreed with the plaintiff's contention that the trial court erroneously resolved the commonality issue by placing improper emphasis on the absence of a uniform policy to violate meal or rest break requirements. It elucidated that the lower court merely concluded that the plaintiff failed to produce evidence of a uniform policy, thereby rendering a finding of commonality on this issue less viable than he claimed.

## C. *Bufil's Lawsuit*

Less than four months after the appellate court decision in *Chin/Nguyen*, Bufil filed the complaint in this action. She defined the putative class as two subclasses of hourly employees employed by Dollar in California between the period September 11, 2003, and the present, namely employees for whom Dollar's records depicted a meal period not taken due to either (1) single employee per work shift or (2) in-store training. Like Nguyen, Bufil alleged causes of action for violation of the Labor Code and wage orders, as well as a UCL claim.

Bufil and Dollar thereafter moved, respectively, for class certification and judgment on the pleadings. Dollar asserted that Bufil was collaterally estopped from asserting class claims based on the earlier *Chin/Nguyen* litigation. The trial court agreed and dismissed appellant's class action allegations. As well, it denied appellant's motion for class certification. This appeal followed.

## II. DISCUSSION

### A. *Judgment on the Pleadings*

#### 1. *Standard of Review*

Where the face of a complaint and/or matters subject to judicial notice reveal the invalidity of class allegations, the class issue may be disposed of

by demurrer or motion to strike. (*Canon U.S.A., Inc. v. Superior Court* (1998) 68 Cal.App.4th 1, 5 [79 Cal.Rptr.2d 897].) A motion for judgment on the pleadings, made after the time for a demurrer has expired, in all other respects is the equivalent of a general demurrer. Like a demurrer, grounds for the motion must appear on the face of the complaint or be based on facts capable of judicial notice. We review the complaint de novo to determine whether the complaint states a cause of action, as a matter of law. (*McCormick v. Travelers Ins. Co.* (2001) 86 Cal.App.4th 404, 408 [103 Cal.Rptr.2d 258].)

### 2. *Collateral Estoppel Principles*

■ The doctrine of collateral estoppel thwarts the relitigation of issues previously argued and resolved in an earlier proceeding. For the doctrine to apply, the issue must be identical to an issue that was actually litigated and necessarily decided in a prior proceeding, and the decision therein must have been final and on the merits. Moreover, issue preclusion must be sought against a person who was a party, or in privity with a party in the earlier proceeding. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223]; *Alvarez v. May Dept. Stores Co.* (2006) 143 Cal.App.4th 1223, 1233 [49 Cal.Rptr.3d 892] (*Alvarez*).) A prior judgment operates as a collateral estoppel on issues which were raised, notwithstanding that some factual matters or legal arguments which could have been presented in the prior case were not. (*Interinsurance Exchange of the Auto. Club v. Superior Court* (1989) 209 Cal.App.3d 177, 181 [257 Cal.Rptr. 37].)

General principles of collateral estoppel pertain when a prevailing party seeks to enforce a ruling denying class certification against an absent putative class member. (*Alvarez, supra,* 143 Cal.App.4th at p. 1236.) Those principles ensure that the interest of the absent party was represented adequately in the prior proceeding. (*Ibid.*) In *Alvarez,* the employer department store had faced two prior class actions asserting failure to pay overtime compensation. The trial courts denied class certification in both cases and one resulted in a Court of Appeal affirmance. (*Duran v. Robinsons-May, Inc.* (Apr. 18, 2003, E031288) [nonpub. opn.] (*Duran*).) (*Alvarez, supra,* at pp. 1228–1229.) The *Alvarez* court held that the *Duran* and *Alvarez* complaints each alleged the same general misconduct concerning the same policies and procedures, occurring over approximately the same period of time. The parties in both suits sought to certify the same class of employees, and indeed the *Alvarez* plaintiffs conceded that they were, by definition, included within the *Duran* class. Further, the *Duran* and *Alvarez* plaintiffs used the same attorneys in their quest for class certification. And, although the causes of action were not

identical, the primary right theory which underpins the principle of collateral estoppel does not require an identity of legal theories. The primary right declared in each case was the right to litigate the claims as a class action. (*Id.* at p. 1237.) Concluding that principles of collateral estoppel applied to preclude class certification of the *Alvarez* suit, the court held that the *Duran* plaintiffs were " 'virtual representatives' " of the *Alvarez* plaintiffs, noting that the "interested parties, their claims, and their counsel are the same." (*Id.* at p. 1238.)

### 3. *Analysis*

Bufil attacks the trial court's collateral estoppel ruling, urging that the classes in the two cases are not the same and thus the issues are different. We agree. Unlike *Alvarez*, the class that Bufil asserts is not identical to the class asserted by Chin. Rather, it is a distinct subclass restricted to hourly employees who tracked Dollar's recordkeeping system from September 2003 to the present with the designation of not having taken a meal period because the employee was the only employee in the store or was supervising a trainee who could not be left alone.

Notwithstanding this obvious narrowing of the class from that defined by Chin, the trial court concluded that "the same class problems involving liability are implicated here. Each employee would still have to present his understanding of the California Meal Agreement and their perceptions of their rights in signing or refusing to execute it without suffering adverse consequences. This precise issue has been finally and actually litigated in [*Chin*] . . . ."

■ The court made an erroneous assumption that each class member would need to testify as to his or her understanding of the meal period waiver. This *was* an issue in *Chin/Nguyen* but it is irrelevant to Bufil's lawsuit. Bufil's theory is that the two circumstances—single employee on duty or providing training—do not come within the "nature of the work" exception set forth in Wage Order No. 4-2001, so as to permit an "on-duty" meal period. This is a legal question concerning the liability of Dollar to each putative class member. Bufil is not concerned with whether a given employee signed a meal period waiver, does not assert that anyone was forced to sign anything, and does not attack the execution of the agreements or the intent and understanding of the parties regarding the same.[3] Her position is that

---

[3] Indeed, counsel for Bufil emphasized this point in the hearing on the parties' dual motions, making it clear that "We do not contend in this case that the meal agreements are not binding. We do not contend in this case that the meal agreements were compulsory and therefore not in effect. . . . [¶] So the issue of whether the agreements were voluntarily entered into which the court found had to be an individual inquiry was an issue decided in the earlier case that's not

either the putative class employees were denied an off-duty meal for an improper purpose, or they were not. Under Bufil's structuring of the case, the court could identify the class from Dollar's records and determine liability as a matter of law. In this case Bufil proposes a class that on its face attempts to correct flaws identified in the *Chin/Nguyen* lawsuit resulting in denial of certification. The trial court here erred in ruling that the class proposed by Bufil involved "the same class problems involving liability" as were implicated in *Chin/Nguyen,* and thus erroneously concluded that issue preclusion should bar her quest for class certification. (See *Oshana v. Coca-Cola Bottling Co.* (N.D.Ill. 2005) 225 F.R.D. 575, 579.)

## B. *Motion for Class Certification*

### 1. *Certification Requirements; Standard of Review*

■ Code of Civil Procedure section 382 allows class actions "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." The proponent of certification has the burden of establishing the existence of an ascertainable class as well as a well-defined community of interest among class members. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96. P.3d 194] (*Sav-On*).) In addition, the assessment of suitability for class certification entails addressing whether a class action is superior to individual lawsuits or alternative procedures for resolving the controversy. (*Capitol People First v. State Dept. of Developmental Services* (2007) 155 Cal.App.4th 676, 689 [66 Cal.Rptr.3d 300].)

Trial courts enjoy wide discretion with regard to class certification. We will not overturn the lower court's certification decision which is supported by substantial evidence unless the court used improper criteria or made erroneous legal assumptions. By the same token, even if a trial court's decision denying certification is supported by substantial evidence, we will reverse if the order is based on improper criteria or incorrect assumptions. (*Linder v.*

present in this case. [¶] . . . We are not attacking the bona fides of the meal period agreement." Further, counsel noted plaintiff was not claiming that the meal agreement was ambiguous in any way. Additionally, counsel stated that he attempted to compel discovery of every meal period agreement to confirm that everyone signed it, but Dollar refused to produce the agreements. Nonetheless, plaintiffs presented evidence of Dollar's systemic practice that every new hire was required to sign the agreement, and counsel argued that such evidence was sufficient "for purposes of predominant commonality as to a policy and practice applied to every single class member." The court noted that notwithstanding this company policy, Soper testified that there were no consequences to an employee not signing the agreement. Counsel then asked the court to consider a modification to the class definition restricting it to persons who signed a meal agreement. The court took no action on this request.

*Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435–436 [97 Cal.Rptr.2d 179, 2 P.3d 27]; *Capitol People First v. State Dept. of Developmental Services, supra,* 155 Cal.App.4th at p. 689.) Accordingly, in our review of an order denying class certification, we consider only the reasons cited by the trial court for the denial, and ignore other reasons that might support denial. (*Quacchia v. DaimlerChrysler Corp.* (2004) 122 Cal.App.4th 1442, 1447 [19 Cal.Rptr.3d 508].)

### 2. *Analysis*

Here the trial court denied the motion for class certification on the same basis it granted judgment on the pleadings—that is, on collateral estoppel grounds. Continuing, the court additionally indicated that liability as to the class involved substantial and numerous individual factual questions, giving, as the sole example, each employee's understanding of his or her rights under the meal plan. Elaborating, the court explained: "Similar to the class in *Nguyen,* employees would have to individually testify as to their perceptions of their rights in signing or refusing to execute the meal agreement without suffering adverse consequences. These issues apply to both the rest period and meal period components of the class, thus the individual issues predominate over Plaintiff's [claim that common issues predominate]." Finally, the court held that Bufil did not prove the existence of an ascertainable class of employees who purportedly missed off-duty rest periods.

### a. *Commonality*

■ We have already dispatched the flaws in the court's reasoning concerning the commonality issue. Further compounding the court's misunderstanding, the purported meal period waivers had nothing to do with the rest period claims because an employee cannot waive such claims. The permitted waiver of the meal requirement applies only to meal periods, not to rest breaks. (§ 11040, subds. 11(A), 12(A).) The court thus erred in holding that collateral estoppel mandated denial of Bufil's certification motion.

Dollar's arguments to the contrary are not compelling. The company asserts that there was "voluminous evidence" on the commonality question regarding rest break claims, specifically (1) point of sale data showing Bufil had breaks of up to 47 minutes between transactions; (2) deposition testimony from a putative class member admitting employees could read during business lulls and take smoking and other breaks throughout the day; (3) evidence that each manager had the responsibility for scheduling breaks on a store-by-store basis; and (4) evidence that the company posted the pertinent wage order announcing the meal and rest break requirements in each of its stores, and provided a break area to accommodate meal and rest breaks.

Initially we note that the trial court did not cite or discuss any of this evidence in its ruling, and we are constrained by the reasons set forth by the court for denying certification. Assuming for purposes of argument only that Dollar can raise these matters based on the fact that the court's recitation of meal plan issues was given as the sole *example* of lack of commonality, the evidence does not help Dollar. First, the trial court explicitly *rejected* point of sale data as evidence showing that some employees alone at a store or working alone with a trainee actually did take a bona fide off-duty rest break. Second, the deposition testimony was that of Chin, the plaintiff in the earlier lawsuit, who testified he took perhaps four cigarette breaks a day but was not able to smoke a complete cigarette because a customer would appear. Chin's testimony is not pinpointed to the class period of the current suit, does not set forth that he was the only person in the store or working alone with a trainee, and in any event the evidence suggested he was a salaried exempt employee and manager during much of his employment, not an hourly employee subject to the meal and rest break rules.

Additionally, the reality that each manager has responsibility for scheduling breaks does not undermine Bufil's point that according to Dollar's policy, an hourly employee who was the only person in the store or working alone with a trainee was not authorized to lock the store, ignore customers, quit monitoring traffic, etc., in order to be off duty for a rest period of 10 consecutive minutes. There was no evidence forthcoming that despite these two circumstances, individual managers defied company policy or otherwise invented a way for employees working alone, or alone with a trainee, to take a rest break. Indeed, Bufil submitted declarations of several store managers attesting on their personal knowledge that when employees worked alone during a single shift or with one other person who was in training, they were not allowed to go off duty for any type of break.[4] And, finally, no one disputes that the wage order was posted or that there were designated areas to take a break—these matter naught if a single-shift sole employee or sole employee working with a trainee is not able to take an off-duty break.

b. *Ascertainability*

As to the ascertainability question, its purpose is " 'to give notice to putative class members as to whom the judgment in the action will be res judicata.' [Citation.] 'Class members are "ascertainable" where they may be readily identified without unreasonable expense or time by reference to official records. [Citation.]' " (*Aguiar v. Cintas Corp. No. 2* (2006) 144

[4] The trial court sustained objections to these declarations to the extent they purported to prove Dollar's general policies or general practices or the actual practices of other store managers. The declarations were allowed over objection to the extent they spoke to what the declarants actually observed.

Cal.App.4th 121, 135 [50 Cal.Rptr.3d 135] (*Aguiar*).) In determining whether a class is ascertainable, the trial court examines the class definition, the size of the class and the means of identifying class members. (*Miller v. Woods* (1983) 148 Cal.App.3d 862, 873 [196 Cal.Rptr. 69].)

▓ Additionally, a class is not inappropriate merely because each member at some point may be required to make an individual showing as to eligibility for recovery. (*Aguiar, supra*, 144 Cal.App.4th at p. 136.) For example, a class of all workers employed as claims representatives is not less ascertainable even though a marginal percentage of such employees may not have worked overtime and therefore would not be entitled to any recovery. (*Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 742–743 [9 Cal.Rptr.3d 544].) Thus, rather than focusing the ascertainability question on the ultimate fact class members would have to prove to establish liability, this element is "better achieved by defining the class in terms of objective characteristics and common transactional facts making the ultimate identification of class members possible when that identification becomes necessary." (*Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 915 [107 Cal.Rptr.2d 761].)

Arguing that the proposed class was not ascertainable as to rest period claims, Dollar states there are no records identifying whether any employee missed a rest period and it has no obligation to maintain such records. There is no disagreement on these points, but they are not pertinent to the issue of ascertainability because Bufil has defined a class precisely identified by Dollar records. The opinion in *Aguiar* is instructive. There, the reviewing court reversed the lower court's ruling that said the proposed class was not ascertainable. That class consisted of all of the current and former employees of Cintas Corporation at three facilities who worked on service contracts with a municipal water and power department for a certain period. (*Aguiar, supra*, 144 Cal.App.4th at p. 136.) On appeal, the court found that members of the proposed class were ascertainable from the company's payroll records which would identify all employees who performed functions relevant to the pertinent contracts during the timeframe in question. The reviewing court concluded that even though specific employees were not assigned to work on the municipal contract items, "it [would be] reasonable to infer *at this stage of the litigation* that all employees in relevant positions worked to some extent," on those contracts. (*Ibid.*, italics added.) The company in fact had not kept track of the employees who worked on the municipal contracts, although it certified it would do so. This was not a problem, because if it were later determined that certain employees did not work on those contracts, they could be eliminated from the class at that time. (*Ibid.*)

So, too, the class Bufil proposes by definition is ascertainable from Dollar records, i.e., hourly employees from September 2003 to the present for whom the MMTimesheet records show a meal period not taken because the employee was the only person in the store or the only person with a trainee. These employees, and only these employees, claim failure to provide rest breaks. Bufil's theory is this: The entry in the timekeeping records of one of these two reasons gives rise to the rest period claims based on the company policy and practice established by Soper's testimony. Soper declared that when an employee works alone in a store, or alone with a trainee, they are never permitted or authorized to close up; in effect they were never off duty and could never put up a sign saying "I'm off on break." Dollar's speculation that other employees "could have been working" at the time of a given employee's rest break, even if that employee logged one of the two reasons for an "on-duty" lunch is just that—speculation that goes to the merits of ultimate recovery, an inappropriate focus for the ascertainability inquiry. The court in *Bell* rejected this type of argument when it held that an employee class seeking overtime compensation was ascertainable even though some employees may not have worked overtime. (*Bell v. Farmers Ins. Exchange*, *supra*, 115 Cal.App.4th at p. 743.)

### c. *Superiority*

██ The trial court made a passing, perfunctory reference to superiority in its order denying class certification, finding that plaintiffs did not establish that the class action is a superior method for resolving the litigation. Courts regularly certify class actions to resolve wage and hour claims. (See *Pressler v. Donald L. Bren Co.* (1982) 32 Cal.3d 831, 837 [187 Cal.Rptr. 449, 654 P.2d 219]; see also *Sav-On*, *supra*, 34 Cal.4th at p. 340; *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 579–580 [94 Cal.Rptr.2d 3, 995 P.2d 139]; *Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1423 [95 Cal.Rptr.2d 57].) In this arena the class action mechanism allows claims of many individuals to be resolved at the same time, eliminates the possibility of repetitious litigation and affords small claimants with a method of obtaining redress for claims which otherwise would be too insignificant to warrant individual litigation. (*Sav-On*, *supra*, 34 Cal.4th at p. 340.) Moreover, the issues slated for contest are primarily common issues involving common evidence. It would not be efficient or fair to relegate these complaints to multiple trials. To the extent the trial court independently ruled that the element of superiority was lacking, it erred.

## III. DISPOSITION

The judgment is reversed.

Ruvolo, P. J., and Rivera, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 30, 2008, S164570. George, C. J., did not participate therein.