Filed 12/31/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| FRANK KOVAL et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>PACIFIC BELL TELEPHONE CO.,<br><br>    Defendant and Respondent. | A139570<br><br>(Alameda County<br>Super. Ct. No. JCCP004637) |

**INTRODUCTION**

Plaintiffs Frank Koval, Mike Williams, Vanmark Strickland, and Donald Washington filed this consolidated class action lawsuit against their employer, defendant Pacific Bell Telephone Company (d.b.a. AT&T California) (Pacific Bell). They alleged Pacific Bell violated California law by failing to relinquish control over their activities during meal and rest break periods, and moved for class certification. Relying, in part, on *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004 (*Brinker*), the trial court concluded plaintiffs failed to show Pacific Bell's allegedly restrictive policies had been consistently applied to the putative class members. The court denied class certification on the ground that common questions do not predominate over individual questions, making the class action procedure an inappropriate method for resolving this dispute. We affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

*I. Background*

Pacific Bell is a telecommunications company providing wireline local telephone service, as well as digital television and Internet service, to residential, business, and

1

governmental customers throughout much of the state of California. Named plaintiffs Koval, Williams, Strickland, and Washington are or were hourly nonexempt field technicians employed at one or more of Pacific Bell's regional operations.

State law obligates employers to afford their nonexempt employees meal periods and rest periods during the workday. (See Lab. Code, §§ 226.7, 512; Cal. Code Regs., tit. 8, § 11040 (Industrial Wage Commission (IWC), wage order no. 4-2001)(Wage Order No. 4).)[1] Labor Code section 226.7, subdivision (b)[2] prohibits an employer from requiring an employee "to work during a meal or rest period . . . mandated pursuant to an applicable . . . order of the Industrial Welfare Commission . . . ." In turn, Wage Order No. 4, subdivision 12 prescribes rest periods, while subdivision 11, as well as section 512 of the Labor Code, prescribes meal periods. Employers who violate these requirements must pay premium wages. (§ 226.7, subd. (c); Wage Order No. 4, subds. 11(B), 12(B); see *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1113-1114 (*Murphy*).)

## II. Commencement of Action

On February 16, 2010, plaintiff Washington filed a putative class action against Pacific Bell in the Superior Court, County of Los Angeles, seeking to represent "all service technicians" employed by Pacific Bell. Among his claims, the complaint alleged failure to provide meal and rest break periods or to pay compensation in lieu thereof.

---

[1] The IWC "is the state agency empowered to formulate wage orders governing employment in California. [Citation.] The Legislature defunded the IWC in 2004, however its wage orders remain in effect." (*Murphy, supra,* 40 Cal.4th at p. 1102, fn. 4.) IWC wage order no. 4-2001 (Wage Order No. 4), which covers technical and mechanical occupations, applies here. (Cal. Code Regs., tit. 8, § 11040, subd. 2(O).)

[2] All further statutory references are to the Labor Code unless otherwise specified.

On April 20, 2010, plaintiffs Koval, Strickland, and Williams, along with Kenesha Mayfield and Frank Manibusan, filed a similar putative class action in the Superior Court, County of Alameda.[3]

On September 28, 2010, the Los Angeles and Alameda County actions were ordered consolidated.

On January 25, 2011, the trial court issued an order allowing plaintiffs to file a consolidated amended class action complaint.

On November 1, 2011, plaintiffs filed a second consolidated amended class action complaint.

On October 12, 2012, plaintiffs filed a third consolidated amended class action complaint. This is the operative complaint for purposes of this appeal. In the complaint, plaintiffs purport to represent all individuals employed by Pacific Bell in nonexempt field personnel classifications, such as service technicians, systems technicians, cable locators, and splicing technicians, from February 16, 2006 through the date of judgment. The complaint alleges the following causes of action: (1) failure to provide meal periods, (2) failure to provide rest breaks, (3) failure to pay wages at overtime rate, (4) failure to provide accurate itemized wage statements, (5) failure to timely pay wages due at termination, (6) violation of unfair competition law (Bus. & Prof. Code, § 17200 et seq., hereafter UCL), and (7) enforcement of the Private Attorneys General Act of 2004 (PAGA).

### III.  *Motion for Class Certification*

On July 16, 2012, plaintiffs filed a motion for class certification under Code of Civil Procedure section 382. In addition to certification of the class of nonexempt field personnel, plaintiffs sought authorization for two subclasses: one for waiting-time

---

[3] Mayfield and Manibusan were voluntarily dismissed as named plaintiffs on July 1, 2011.

penalties and another for itemized-wage-statement and PAGA penalties.[4] Plaintiffs focused on Pacific Bell's written job performance guidelines, which they claimed contain several explicit restrictions on how employees could spend their meal and rest periods. By imposing these restrictions, Pacific Bell allegedly failed to release the employees from the company's control during their breaks.[5]

In support of their certification motion, plaintiffs submitted copies of 13 documents they referred to collectively as "Job Performance Policies and Expectations" (JPPE's). The documents – bearing titles such as "Local Field Operations ("LFO")-Out Standards," "Roles and Responsibilities For Systems Technicians," and "Business Service Operations-Job Standards" – are regional field operations manuals that were in effect at various times. These documents collectively contain hundreds of guidelines and best practices regarding field technician job duties. From these manuals, plaintiffs extracted seven allegedly restrictive guidelines.[6] Six guidelines purportedly impacted technicians' autonomy during meal periods, while one applied to rest breaks only. Plaintiffs asserted these guidelines, among other things, converted them and their fellow class members into "de facto security guards for their company vehicles during their breaks," thereby failing to relieve them of all work-related duties.

In brief, six guidelines allegedly prohibited employees on meal breaks from: (1) meeting up with their colleagues ("no ganging up"), (2) going to their personal residences, (3) leaving their trucks ("abandonment"), (4) riding in other vehicles, (5) sleeping in trucks, or (6) driving their trucks outside normal work routes to get a meal

---

[4] The putative class is estimated to include approximately 6,700 current and former employees.

[5] California Code of Regulations, title 8, section 11090, subdivision (2)(G) provides: " 'Hours worked' means the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

[6] Not all of the various field operations manuals contain all seven of the targeted guidelines. The manuals were consolidated into a single set of JPPE's in 2008.

4

("out-of-route rule"). While exceptions could be made to some of these restrictions, deviations had to be noted on the employee's timesheet with the name of the manager who approved the deviation. A seventh policy provided that employees were not allowed to take rest breaks at coffee shops or restaurants.

It is undisputed that Pacific Bell has facially compliant meal and rest break period policies. Because Pacific Bell's official meal-period policies are facially valid, the issue here is whether other systematic company guidelines prevented employees from fully realizing the breaks to which they were entitled. Plaintiffs supported their assertions with declarations from 76 class members. Each described how they became aware of the JPPE's and how the policies impacted their meal and rest breaks. Plaintiffs also included deposition testimony from James Beck, who was designated as Pacific Bell's most knowledgeable person with regard to the policies at issue, as well as testimony from other management-level employees.

Beck testified that field employees are expected to adhere to the expectations contained in the JPPE's. Failure to do so can result in disciplinary action up to, and including, dismissal. He acknowledged that between 2006 and 2010, field technicians were prohibited from going out of route without management approval, including during their meal and rest periods. Employees were also instructed not to leave their vehicles to ride in a separate vehicle to another location during their breaks. He confirmed the policy prohibiting employees from "ganging up" applied during meal periods.

On October 12, 2012, Pacific Bell filed its opposition to the motion for class certification. The company asserted there were no uniform written rules restricting its employees' meal-time activities. Instead, plaintiffs' allegations rested entirely on the oral instructions that were given to them by their individual supervisors. It further argued that its liability, if any, "could flow only from a supervisor's misinterpretation of written rules or exercise of discretion." It claimed individualized inquiries would thus be needed to determine which oral instructions had been given to each putative class member. It

5

supported its argument with deposition excerpts from several putative plaintiffs. For example, some technicians stated they were never told to stay with company vehicles during lunch. Supervisors had also provided highly variable instructions regarding whether field personnel could go home at lunch, with some prohibiting the practice and others allowing it. Others allowed it only if the employee's home was in route or if he or she obtained prior permission. Pacific Bell also offered a declaration of Beck, in which he stated that supervisors had discretion over whether to make exceptions to the JPPE's.[7] Pacific Bell concluded that determining whether the policies were so restrictive as to have transformed break time into work time would necessitate individualized inquires.

Following a hearing, the trial court found the proposed class and subclasses to be both ascertainable and sufficiently large. The court observed, under the leading case of *Brinker, supra,* the relevant inquiry as to commonality could be analyzed by examining whether the disputed workplace policies were both uniform and consistently applied. The court noted plaintiffs had submitted 13 different versions of Pacific Bell manuals that had been in force at various times during the proposed class period. Notwithstanding this diversity, the court determined the language in the various manuals and documents, while somewhat inconsistent, could be deemed substantially similar so as to satisfy the "uniform policy" standard for class certification. The trial court reasoned that minor dissimilarities in the policies governing particular class members could potentially be addressed by subclassing.

However, as to the second inquiry under *Brinker,* the trial court concluded the evidence revealed the policies had not been consistently applied: "What is important, and

---

[7] Beck asserted the following passage, which appears in many of the guidelines, gives supervisors "the discretion to interpret and apply the guidelines and to develop local standards: [¶] In addition to the standards outlined in this document, **all employees have standards, policies, and expectations that have been developed and deployed by their local management teams.** Generally, these policies add to the expectations in this document and are not in conflict with them. However, the circumstance where local policy and/or agreements are in direct conflict with expectations in this document, employees are guided appropriately." (Emphasis in declaration.)

6

ultimately fatal to Plaintiffs' bid for class certification, is the manner in which the six rules reflected in the written materials were applied, and that in turn begins with the question of how the rules were communicated." Specifically, the evidence showed these policies were disseminated orally by line supervisors in ways that varied widely, creating "serious doubt . . . as to whether the rules were consistently applied so as to allow adjudication of the liability issues on a class-wide basis."[8] For this reason, the court denied class certification. This appeal followed.

## DISCUSSION

We briefly revisit the legal requirements for certification of a class action and then examine plaintiffs' contentions.

### I. Class Action Certification and Standard of Review

The certification question is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." (*Linder v. Thrifty Oil Co*. (2000) 23 Cal.4th 429, 439-440.) "A trial court ruling on a certification motion determines 'whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' " (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (*Sav-On*).) A party seeking class certification must show "the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives." (*Brinker, supra,* 53 Cal.4th at p. 1021; see Code Civ. Proc., § 382.)

The community-of-interest requirement comprises three factors: predominant common questions of law or fact; class representatives with claims or defenses typical of

---

[8] For example, plaintiff Washington understood the "out-of-route rule" prohibited going over a mile off route, but had also heard it meant not going to a different town. Other workers understood that they could go out of route to find food, or could do so with management approval.

the class; and class representatives who can adequately represent the class. (*Brinker, supra,* 53 Cal.4th at p. 1021.) In this appeal, the sole issue is whether plaintiffs established the element of predominance of common questions. This element requires, essentially, that factual and legal questions common to the claims of the putative class members predominate over issues affecting members individually. Generally, "if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages." (*Id.* at p. 1022.) To determine the issue, the trial court "must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate." (*Id.* at p. 1025.)

Whether to certify a class rests within the broad discretion of the trial court. (*Brinker, supra,* 53 Cal.4th at p. 1022.) Generally, an order denying certification will not be disturbed unless it: (1) is unsupported by substantial evidence, (2) rests on improper criteria, or (3) rests on erroneous legal assumptions. (*Id*. at p. 1022.)

## II. *Meal and Rest-Break Law Under* Brinker

In *Brinker,* the California Supreme Court clarified that an employer is required to make uninterrupted meal periods and rest breaks available to its employees, but is not obligated to ensure that they are taken.[9] (*Brinker, supra,* 53 Cal.4th at pp. 1034, 1040–1041.) The court summarized its holding as follows: "An employer's duty with respect to meal breaks . . . is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so.

---

[9] Previously, the Supreme Court had held that an employer may be found liable even when it makes rest and meal breaks available to nonexempt employees if it also requires them to be available for work during those periods. (See *Murphy, supra,* 40 Cal.4th 1094 at p. 1104 [requirement to provide rest and meal periods implies that employee will "be free of the employer's control during the meal period"].)

What will suffice may vary from industry to industry, and we cannot in the context of this class certification proceeding delineate the full range of approaches that in each instance might be sufficient to satisfy the law." (*Brinker, supra,* 53 Cal.4th at p. 1040.)

In the course of its ruling, the *Brinker* court stated: "Claims alleging that a *uniform policy consistently applied* to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." (*Brinker, supra,* 53 Cal.4th at p. 1033, italics added.) In support of this statement, the court cited three Court of Appeal cases: *Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286 (*Jaimez*), *Ghazaryan v. Diva Limousine, Ltd.* (2008) 169 Cal.App.4th 1524 (*Ghazaryan*), and *Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193 (*Bufil*). In all three cases the appellate courts concluded the lower courts had abused their discretion by denying class certification. (*Jaimez, supra,* at pp. 1299-1307; *Ghazaryan, supra,* at pp. 1534-1538; *Bufil, supra,* at pp. 1205-1206.) These opinions reasoned that the plaintiffs were challenging uniform employment policies that allegedly violated California law and, therefore, the violations could be proved (or disproved) through common facts and law. (*Jaimez, supra,* at pp. 1299-1300; *Ghazaryan, supra,* at pp. 1536-1538; *Bufil, supra,* at p. 1206.) The courts in *Jaimez* and *Ghazaryan* also concluded common issues can predominate even if damages must be proved individually. (*Jaimez, supra,* at pp. 1300-1301, 1303-1305; *Ghazaryan, supra,* at pp. 1536-1537.)

### III. The Trial Court Applied the Correct Legal Standard

In their motion for certification, plaintiffs argued that the JPPE's were uniform policies governing all California field personnel. Their memorandum of points and authorities highlights the same "uniform policy consistently applied" language from the *Brinker* case that the trial court used to craft its two-step analysis. Thus, they essentially invited the court to use this language as the framework for its decision. While plaintiffs did not assert that *Brinker* had created a two-part test, we do not perceive that the trial court here treated the passage from *Brinker* as such.

It is true that the *Brinker* court observed "a uniform policy consistently applied" *can* support certification. (*Brinker, supra,* 53 Cal.4th at p. 1033.) But it did not say that a case *must* proceed as a class action when there is such a facially uniform policy. *Brinker* simply points out that class treatment *can be* appropriate in a wage-and-hour case involving a uniform policy, especially one that is being applied consistently. We also disagree with plaintiffs' contention that the trial court's ruling "necessarily rested on its merits determination that a legally material distinction exists among the JPPEs . . . ." Rather than making a determination on the merits, the court made a determination that the merits *cannot* be determined on a classwide basis. As we will discuss, this finding was well within the permissible bounds of the court's discretion.

## IV. *There Was No Abuse of Discretion*

Plaintiffs assert the court "committed legal error by rewriting [their] theory of liability" and imputing from *Brinker* a requirement that they introduce facts showing "both uniform policies and consistent *application* of those policies" in order to find that common issues predominate for purposes of class certification. (Italics added.) They contend their theory of liability requires only a showing of the existence of a uniform policy that conflicted with Pacific Bell's obligation to provide them with duty-free breaks. They claim a trial court's inquiry at the certification stage should be on the moving party's asserted theory of liability, rather than on how the allegedly unlawful policies were implemented.

We conclude the trial court here did not misapply *Brinker*. As to certification, *Brinker* summarized the governing principles as follows: "Presented with a class certification motion, a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate." (*Brinker, supra,* at p. 1025.) In the present case, the trial court simply made a determination as to whether plaintiffs' action, overall, is amenable to class treatment. Recent appellate decisions show that the existence of a

10

uniform policy does not limit a trial court's inquiry into whether class action treatment is appropriate in meal and rest-break cases.

In *Hall v. Rite Aid Corp.* (2014) 226 Cal.App.4th 278 (*Hall*), the appellate court described its view of post-*Brinker* developments: "Subsequent cases have concluded, considering *Brinker,* that when a court is considering the issue of class certification and is assessing whether common issues predominate over individual issues, the court must 'focus on the policy itself' *and address whether the plaintiff's theory* as to the illegality of the policy *can be resolved on a classwide basis*. [Citations.] Those courts have also agreed that, where the theory of liability asserts the employer's uniform policy violates California's labor laws, factual distinctions among whether or how employees were or were not adversely impacted by the allegedly illegal policy *does not preclude* certification. [Citation.]" (*Hall, supra,* 226 Cal.App.4th at p. 289, italics added.)[10]

In *Benton v. Telecom Network Specialists, Inc.* (2013) 220 Cal.App.4th 701 (*Benton*), also relied on by plaintiffs, the appellate court considered whether a proposed class of cell phone tower technicians asserting meal and rest break violations could establish the employer's liability through common proof. In that case, the employer, Telecom Network Specialists (TNS), provided personnel services to the telecommunications industry by hiring employees directly or by retaining them through staffing agencies. (*Id.* at p. 705.) The plaintiff, a contractor technician, alleged TNS had failed to ensure its staffing agencies complied with wage and hour laws and sought to certify a class of contractor technicians. The complaints alleged there were " 'numerous questions of law and fact common to the [class],' including, in part: '[w]hether TNS was the employer of the [c]lass [m]embers'; '[w]hether TNS provided meal [and rest] breaks in accordance with California law'; and '[w]hether the [c]lass [m]embers were denied

---

[10] We observe, just as these factual distinctions do not *preclude* certification, the existence of a uniform policy does not necessarily *mandate* certification. Each case must be addressed on its own unique facts.

11

premium wages for overtime worked in violation of California law.' " (*Benton, supra,* 220 Cal.App.4th at p. 706.) The trial court denied the motion for certification based on its finding that the technicians were governed by a wide range of staffing company management policies and worked in diverse workplace environments. (*Id.* at pp. 714-715.)

In keeping with the Supreme Court's rationale in *Brinker,* the Court of Appeal reversed the trial court's order denying class certification. (*Benton, supra,* 220 Cal.App.4th at p. 731.) Quoting another post-*Brinker* decision (*Faulkinbury v. Boyd & Associates, Inc.* (2013) 216 Cal.App.4th 220, 235 (*Faulkinbury*)), the *Benton* court stated, " 'the employer's liability arises by adopting a uniform policy that violates the wage and hour laws. Whether or not the employee was able to take the required break goes to damages, and "[t]he fact that individual [employees] may have different damages does not require denial of the class certification motion." ' " (*Benton, supra,* 220 Cal.App.4th at p. 726; see also *Bradley v. Networkers Internat., LLC* (2012) 211 Cal.App.4th 1129, 1151 (*Bradley*) ["[u]nder the logic of [*Brinker*], when an employer has not authorized and not provided legally required meal and/or rest breaks, the employer has violated the law and the fact that an employee *may* have actually taken a break or was able to [take a break] during the workday does not show that individual issues will predominate in the litigation"].)

Notably, the appellate court did not hold that certification is required in all cases involving allegedly uniform policies. Instead, the opinion held that the lower court had erred in "fail[ing] to evaluate *whether* plaintiffs' theory of recovery could be proved (or disproved) through common facts and law." (*Benton, supra,* 220 Cal.App.4th at p. 731, italics added.) Further, we note that, in spite of this error, the appellate court did not order the trial court to certify the matter as a class action. Instead, the case was remanded for reconsideration: "Although the reasons set forth in the trial court's written order do not provide a sufficient basis for denying class certification, the record demonstrates that

12

TNS raised additional arguments which the court did not address." (*Ibid.*) Thus, the existence of a uniform policy is not the sole deciding factor in a certification analysis.

Plaintiffs assert their "theory of liability" is that Pacific Bell's policies, as written, fail to comply with California law on their face. While Pacific Bell maintained written policies that are uniform, in the sense that they are in writing, the evidence supports the trial court's conclusion that supervisors did not consistently articulate these policies to class members. Instead, substantial evidence supports the court's finding that each supervisor conveyed the policies to class members orally, a practice which the evidence also shows resulted in diverse practices and differing interpretations as to what the rules required. In this sense, the policies are far from uniform. We agree with the court that this management practice, combined with the confusing overlay of policy manuals containing different combinations of rules that were applicable to the various job classifications at different times, creates a shifting kaleidoscope of liability determinations that render this case unsuitable for class action treatment.

The present case is more similar to *Morgan v. Wet Seal, Inc.* (2012) 210 Cal.App.4th 1341 (*Morgan*), on which Pacific Bell relies. In that case, the plaintiffs alleged that the employer required employees to purchase company clothing to wear for work. (*Id*. at p. 1344.) They sought certification due to the employer's failures to reimburse employees for such expenses. (*Id*. at p. 1345.) The employer's written company policy stated that employees were not required to purchase company clothing as a condition of employment. (*Id*. at pp. 1347-1349.) Consequently, the plaintiffs' motion relied on what managers told employees in person, through e-mail, and through other communications as proof that the clothing requirement existed. (*Id.* at pp. 1350-1353.) Without a clear company policy, the appellate court concluded there was no common method to prove classwide liability because each individual plaintiff would have his or her own story and individual interpretation of what he or she had been told. (*Ibid.*) Here, while Pacific Bell's written policies were expressly stated, substantial evidence supports

13

the trial court's conclusion that the manner in which the policies were communicated to class members was extremely variable.[11]

Thus, the instant case is distinguishable from *Ghazaryan*, *supra*, and *Jaimez*, *supra*. In both cases, the plaintiffs produced substantial evidence of a company-wide employment policy. The core liability issue was whether that policy was legal or not. (*Ghazaryan, supra,* 169 Cal.App.4th at p. 1536; *Jaimez*, *supra,* 181 Cal.App.4th at pp. 1299-1301.) The appellate courts in both cases noted that declarations describing possible individual variations in the application of the policy could be relevant to the secondary issue of damages, but that damages issue did not predominate over the common issue regarding the legality of the policy itself. (*Ghazaryan, supra,* 169 Cal.App.4th at pp. 1529-1530; *Jaimez, supra,* 181 Cal.App.4th at pp. 1300-1301.) In distinguishing these two cases, the court in *Morgan* made the following observation: "Here, by contrast, plaintiffs produced declaration evidence in an effort to establish a classwide method of proving liability but, as the trial court found, those declarations are not substantial evidence of an articulable companywide policy which could be used to establish classwide liability." (*Morgan, supra,* 210 Cal.App.4th 1341 at p. 1368.) In the present case, while the written JPPE's themselves arguably constituted articulable company-wide policies, the manner in which the policies were implemented was anything but uniform.

We thus concur with the trial court that it would be impractical to "consider each possible combination and interpretation of the six rules, have the trier of fact determine which combinations rise to the level of control so as to amount to a failure to relieve of all duties, and then have each class member show whether he or she was subject to one of the offending combinations of rules. Such an exercise would be totally unmanageable."

---

[11] Plaintiffs do not dispute that variations existed among Pacific Bell's various dispatch garages as to how supervisors communicated the company's JPPE's to plaintiff class members. We note during the class period, Pacific Bell operated an average of 213 field garages in California.

We appreciate the court's concerns: "Trial courts must pay careful attention to manageability when deciding whether to certify a class action. In considering whether a class action is a superior device for resolving a controversy, the manageability of individual issues is just as important as the existence of common questions uniting the proposed class." (*Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 29.) In sum, we conclude plaintiffs have failed to demonstrate that the lower court abused its discretion in denying certification.[12]

## DISPOSITION

The order denying class certification is affirmed.

_____
Dondero, J.

We concur:

_____
Humes, P.J.

_____
Margulies, J.

---

[12] In their reply brief, plaintiffs assert the court erred by not allowing class certification on behalf of specifically identified subclasses. They did not raise this contention in their opening brief. An appellant's failure to raise an argument in its opening brief waives the issue on appeal. (*Tisher v. California Horse Racing Bd.* (1991) 231 Cal.App.3d 349, 361.)

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Hon. Wynne S. Carvill |
| Counsel for Plaintiffs and Appellants: | Hoffman Libenson Saunders & Barba:<br>  Chad A. Saunders<br>    and<br>  H. Tim Hoffman<br><br>The Cooper Law Firm:<br>  Scott B. Cooper<br><br>Altshuler Berzon LLP:<br>  Michael Rubin |
| Counsel for Defendant and Respondent: | Morgan Lewis & Bockius LLP:<br>  George Stohner,<br>  Thomas M. Peterson,<br>  Rebecca D. Eisen<br>    and<br>  Stephen L. Taeusch<br><br>AT&T Services, Inc.:<br>  Jennifer S. Abramowitz |