185 Cal.App.4th 1363 (2010)
JOSIE FAULKINBURY et al., Plaintiffs and Appellants,
v.
BOYD & ASSOCIATES, INC., Defendant and Respondent.
No. G041702.
Court of Appeals of California, Fourth District, Division Three.
June 24, 2010.
*1367 Class Action Litigation Group, Katherine J. Odenbreit, Rene L. Barge; Law Offices of Lawrence A. Witsoe, Lawrence A. Witsoe, Dean P. Schroeter; White & Roseman and Leslie Roseman for Plaintiffs and Appellants.
Nordman Cormany Hair & Compton, Jonathan Fraser Light, Meghan B. Clark, Curtis A. Graham and Gannon Elizabeth Johnson for Defendant and Respondent.

OPINION
FYBEL, J.

INTRODUCTION
Plaintiffs Josie Faulkinbury and William Levene (together, Plaintiffs), on behalf of themselves and all others similarly situated, appeal from the trial court's order denying their motion for class certification. They sought to represent and certify a class of about 4,000 current and former employees of defendant Boyd & Associates, Inc. (Boyd), which provides security guard services throughout Southern California. Plaintiffs and the putative class members work or worked for Boyd as security guards. They assert Boyd denied the putative class members off-duty meal breaks and off-duty rest breaks, and failed to include certain reimbursements and an annual bonus payment in calculating the employees' hourly rate of overtime pay.
Plaintiffs proposed three subclasses, which we will refer to as the "Meal Break Class," the "Rest Break Class," and the "Overtime Class." We affirm the order denying the motion for class certification as to the Meal Break Class and the Rest Break Class because, we conclude, the trial court did not abuse its discretion in finding common issues of law and fact did not predominate over individual issues. We reverse the order denying the motion for class certification as to the Overtime Class and remand with directions to certify that class.

BACKGROUND
Boyd is a private security guard company providing security services throughout Southern California. Boyd's clients include gated residential communities, hospitals, commercial buildings, and retail stores.
Plaintiffs brought this action on behalf of themselves and about 4,000 current and former employees of Boyd, who had been employed in the *1368 position of security guard, post commander, or post supervisor, or a similar position at any time during the class period, defined as the period beginning four years preceding the filing of the original complaint and ending on the date a class is certified. The third amended complaint, the operative pleading, asserted various causes of action under the Labor Code and Business and Professions Code section 17200 et seq. for alleged failure to pay wages, failure to pay nondiscretionary bonus wages, and failure to provide meal and rest periods.
Faulkinbury was employed by Boyd as a security guard from October 2003 to November 2004, and Levene was employed by Boyd as a security guard from January 2003 to February 2005. In declarations, Plaintiffs asserted that, when hired by Boyd, each had to sign an agreement to take on-duty meal periods and that, while employed by Boyd, neither ever took an uninterrupted, off-duty meal break. They also asserted that, while employed by Boyd, they were instructed not to leave their posts and never took any off-duty rest breaks.
Plaintiffs declared their hourly rate of pay was reduced by the amount received as a gasoline allowance and as a uniform maintenance allowance. Faulkinbury declared her stated hourly rate was $11.00, which was reduced to $10.30 for the gasoline and uniform maintenance allowances. Levene similarly declared his stated hourly rate was $9.00, which was reduced to $8.30 for the gasoline and uniform maintenance allowances. He declared that his overtime hourly rate was based on the reduced rate of $8.30 per hour.

CLASS CERTIFICATION MOTIONS
Plaintiffs first moved for class certification in October 2008. Based on the third amended complaint, the first motion for class certification proposed a broadly defined class of "all of these current and former security guards employed by Boyd at any time during a four-year statute of limitations period consisting of approximately 4,000 putative class members" and proposed eight subclasses.[1]
The trial court issued a tentative ruling denying the first motion for class certification "without prejudice." The tentative ruling was lengthy and recited two grounds for denying class certification: (1) inadequacy of the proposed class representatives and (2) lack of typicality of the class representatives' *1369 claims. The tentative ruling identified problems in Plaintiffs' evidence and described additional evidence needed to address the court's concerns.
At the conclusion of the hearing on the first motion for class certification, the court stated: "At this time the court denies the motion for certification. [¶] . . . [¶] While the court pointed out in its tentative its primary concerns as to how the moving party had failed to meet its burden, based on the discussions that we've had, I don't want the moving party to feel that there is not a need to beef up a showing in any other regard as well. Because I think some good points were raised by counsel for defendants regarding whether common issues predominate in some of these areas, such as the bonuses. [¶] So I do make those comments to counsel so that you don't . . . think that all you have to do in order to be successful in certifying a class is give me two more declarations that have a few more magic words in it. Please take to heart the comments, because you will hear them again. And they may or may not be persuasive to the court if certification is requested next time. [¶] So the court does deny certification. It does deny it without prejudice; notwithstanding the request of defendants, because I feel that that's appropriate under the law."
A minute order denying the first motion for class certification without prejudice was entered in November 2008. The minute order recited the trial court's tentative ruling.
One month later, Plaintiffs filed a second motion for class certification, again seeking certification of a broad class of all "current and former security guards employed by Boyd at any time during a four-year statute of limitations period consisting of approximately 4,000 putative class members." The second motion reduced the number of subclasses to these three:
"(1) All current and former Security Guards, Security Guard Supervisors, Post Commanders, Rovers and other similar hourly paid job positions, who were required by Boyd to take an `on-duty' meal break and therefore were not provided mandated, uninterrupted meal periods and who worked for Boyd in California at any time between March 19, 2003 and the date class certification is granted. . . . ([Meal Break Class]).
"(2) All current and former Security Guards, Security Guard Supervisors, Post Commanders, Rovers and other similar hourly paid job positions, who worked for Boyd at any time between March 19, 2003 and the date class certification is granted . . . who were not provided with mandated rest periods. (`Rest Break Class')
*1370 "(3) All current and former Security Guards, Security Guard Supervisors, Post Commanders, Rovers and other similar hourly paid job positions, who worked for Boyd at any time from May 13, 2001 and the date class certification is granted . . . and were not paid overtime wages to reflect annual bonus payments and allowances. . . . ([Overtime Class])."
On the day before the hearing, the trial court issued a tentative ruling to grant the second motion for class certification.[2] The tentative ruling stated Plaintiffs' claims appeared to be typical of those of the class members and Plaintiffs' counsel could adequately represent the class. It also stated that Plaintiffs had established a "well-defined community of interest," that "[c]ommon questions of law and fact include whether the members of the various subclasses were in fact entitled to the breaks, overtime, reimbursements, and bonuses," and that "maintenance of the class action will result in a substantial benefit to the litigants and the court."
At the outset of the hearing on the second motion for class certification, the trial court emphasized, "[t]his is a tentative ruling." The court explained, "I've gone back and forth several times about the issue of individual issues" and stated, "I just wanted to share with counsel that the issue of whether there were common issues, or whether individual issues predominated did give the court most concern."
After hearing argument, the trial court took the second motion for class certification under submission. In February 2009, the trial court issued an order stating: "The Motion for Class Certification is denied. Moving party has not met its burden of establishing the requisites for class treatment. It is not clear, for the reasons stated by defendant, that the proposed classes are ascertainable. Additionally, it appears that individual questions of fact predominate, as set forth by defendant. These individual issues prevail over the common issues."

*1371 DISCUSSION

I.

General Class Action Principles and Standard of Review
"Code of Civil Procedure section 382 authorizes class actions `when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. [Citation.] The `community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.]" (Sav-On Drug Stores, Inc. v. Superior Court (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194] (Sav-On).)
The question of class certification is essentially procedural and does not involve the legal or factual merits of the action. (Sav-On, supra, 34 Cal.4th at p. 326.) The ultimate question in ruling on a class certification motion is whether the issues which may be adjudicated as a class, when compared with the issues which must be adjudicated individually, are sufficiently numerous or substantial to make a class action advantageous to both the litigants and the judicial process. (Ibid.)
Trial courts have discretion in granting or denying motions for class certification because they are well situated to evaluate the efficiencies and practicalities of permitting a class action. (Sav-On, supra, 34 Cal.4th at p. 326.) Despite this grant of discretion, appellate review of orders denying class certification differs from ordinary appellate review. Under ordinary appellate review, we do not address the trial court's reasoning and consider only whether the result was correct. (Kaldenbach v. Mutual of Omaha Life Ins. Co. (2009) 178 Cal.App.4th 830, 843 [100 Cal.Rptr.3d 637].) But when denying class certification, the trial court must state its reasons, and we must review those reasons for correctness. (Linder v. Thrifty Oil Co. (2000) 23 Cal.4th 429, 435-436 [97 Cal.Rptr.2d 179, 2 P.3d 27] (Linder).) We may only consider the reasons stated by the trial court and must ignore any unexpressed reason that might support the ruling. (Ibid.; see also Bufil v. Dollar Financial Group, Inc. (2008) 162 Cal.App.4th 1193, 1204-1205 [76 Cal.Rptr.3d 804] (Bufil).)
We will affirm an order denying class certification if any of the trial court's stated reasons was valid and sufficient to justify the order, and it is supported *1372 by substantial evidence. (Sav-On, supra, 34 Cal.4th at pp. 326-327; see also Kaldenbach v. Mutual of Omaha Life Ins. Co., supra, 178 Cal.App.4th at p. 844 ["We may not reverse, however, simply because some of the court's reasoning was faulty, so long as any of the stated reasons are sufficient to justify the order."].) We will reverse an order denying class certification if the trial court used improper criteria or made erroneous legal assumptions, even if substantial evidence supported the order. (Sav-On, supra, 34 Cal.4th at p. 327; Linder, supra, 23 Cal.4th at pp. 435-436.) A trial court's decision that rests on an error of law is an abuse of discretion. (In re Tobacco II Cases (2009) 46 Cal.4th 298, 311 [93 Cal.Rptr.3d 559, 207 P.3d 20]; Pfizer Inc. v. Superior Court (2010) 182 Cal.App.4th 622, 629 [105 Cal.Rptr.3d 795].)

II.

No Res Judicata
Boyd argues Plaintiffs' failure to appeal from the order denying the first motion for class certification made the order final and res judicata on the issue of class certification. As a consequence, Boyd argues, Plaintiffs cannot challenge the order denying the second motion for class certification.
Boyd did not make this argument in the trial court. Rather than assert res judicata, Boyd opposed the second motion for class certification on its merits and sought a ruling on the motion. By failing to assert res judicata in the trial court, Boyd denied Plaintiffs the opportunity to develop a factual record and denied the trial court the opportunity to make findings on the issue.
The trial court expressly denied the first motion for class certification without prejudice and with the anticipation Plaintiffs could and would bring another motion. "The term `without prejudice,' . . . means that there is no decision of the controversy on its merits, and leaves the whole subject . . . open to another application . . . . [Citations.]" (Chambreau v. Coughlan (1968) 263 Cal.App.2d 712, 718 [69 Cal.Rptr. 783]; see Devereaux v. Latham & Watkins (1995) 32 Cal.App.4th 1571, 1587 [38 Cal.Rptr.2d 849], disapproved on another ground in Moran v. Murtaugh Miller Meyer & Nelson, LLP (2007) 40 Cal.4th 780, 785, fn. 7 [55 Cal.Rptr.3d 112, 152 P.3d 416] ["the fact that the denial of the first motion was without prejudice allowed respondent to bring a later motion"].) The purpose and effect of the words "without prejudice" is to prevent the defendant from asserting res judicata in a subsequent proceeding by the same plaintiffs on the same subject. (Williams v. City of Oakland (1973) 30 Cal.App.3d 64, 69 [106 Cal.Rptr. 101].)
Relying on Guenter v. Lomas & Nettleton Co. (1983) 140 Cal.App.3d 460 [189 Cal.Rptr. 470], Boyd argues the order denying the first motion for class *1373 certification was res judicata notwithstanding use of the term "without prejudice." In Guenter v. Lomas & Nettleton Co., the trial court denied a motion to certify a class without prejudice on the grounds the putative class was not large enough and "`class action would not be a superior form of remedy.'" (Id. at p. 465.) At the hearing on the motion, the trial court suggested the case proceed as an association of 27 plaintiffs rather than as a class action. (Ibid.) In light of those comments and the stated reasons for denying class certification, the Court of Appeal concluded denial of the motion was on the merits, and the term "without prejudice" meant only that the plaintiff could try a method other than a class action to pursue the claims. (Id. at pp. 465-466.)
In this case, in contrast to Guenter v. Lomas & Nettleton Co., the trial court's reasons for denying the first motion for class certification and comments at the hearing on the motion establish without question the court intended the term "without prejudice" to mean without prejudice to bringing a second motion for class certification. The trial court stated its denial of the motion was without prejudice in the tentative ruling, on the record, and in the minute order denying the motion. The court anticipated a second motion for class certification. At the hearing on the first class certification motion, the trial court explained its concerns with Plaintiffs' evidence supporting class certification and commented: "Please take to heart the comments, because you will hear them again. And they may or may not be persuasive to the court if certification is requested next time."

III.

The Appeal Is Not Moot.
Boyd argues the appeal is moot because denial of class certification left only two plaintiffs in the case. Boyd asserts, "[t]here is no reason for this court to evaluate [Plaintiffs'] appeal only to render an advisory opinion on whether the trial court erred in denying the motion for class certification."
As support for its mootness argument, Boyd relies on a motion Plaintiffs filed in the trial court after denial of the second motion for class certification asking the court to deem the case noncomplex. Boyd requests we take judicial notice of that motion and a declaration from Plaintiffs' counsel in support of it. The motion and declaration are records of a court of this state and therefore qualify for permissive judicial notice under Evidence Code section 452, subdivision (d). We grant the request for judicial notice, but the motion and declaration do not advance Boyd's argument.
In the motion, Plaintiffs asserted: "Since the court denied class certification, there are only two plaintiffs remaining in this case. . . . [¶] This case *1374 belongs in Unlimited Civil, where the trial judge can effectively hear this case through trial. There are no longer thousands of plaintiffs remaining in this casejust the two named plaintiffs whose issues can be tried in another courtroom not designated complex."
Boyd treats those comments as a concession Plaintiffs no longer intend to pursue a class action. We disagree. This appeal demonstrates Plaintiffs' intent. Once the trial court denied the second motion for class certification, Plaintiffs were correct in stating only two plaintiffs remained in the case. Plaintiffs did not, however, dismiss their class action allegations and have pursued this appeal to reverse the order denying their second motion for class certification. The appeal is not moot.

IV.

The Trial Court Did Not Consider the Merits of Plaintiffs' Claims in Denying the Second Motion for Class Certification.
Plaintiffs argue the trial court used improper criteria or made erroneous legal assumptions in denying the second motion for class certification because it considered the merits of their claims. This argument is not based on the minute order denying class certification, which identified lack of ascertainability and predominance of individual questions of factboth proper grounds for denying class certification. Instead, Plaintiffs' argument is based on the following syllogism: The trial court's tentative ruling was to grant the second motion for class certification; at the hearing on the motion, Boyd's counsel made improper arguments directed to the merits of Plaintiffs' claims; a month after the hearing, the trial court "without rhyme or reason" denied the motion for class certification; therefore, the decision to deny the motion must have been based on Boyd's arguments made at the hearing that were directed to the merits of Plaintiffs' claims.[3]
As a matter of fact, logic, and law, this syllogism is flawed. The trial court's tentative ruling granting class certification was just thattentative. Trial courts are not bound by their tentative rulings, which are superseded by *1375 the final order. (Fagelbaum & Heller LLP v. Smylie (2009) 174 Cal.App.4th 1351, 1363, fn. 3 [95 Cal.Rptr.3d 252]; In re Marriage of Ditto (1988) 206 Cal.App.3d 643, 646 [253 Cal.Rptr. 770].) At the outset of the hearing on the second motion for class certification, the trial court emphasized the ruling was tentative, stating it had "gone back and forth several times about the issue of individual issues" and "the issue of whether there were common issues, or whether individual issues predominated did give the court most concern." Not only was the trial court entitled to issue an order that was different from the tentative ruling, but in light of those expressed concerns, it could come as no surprise that the trial court ultimately denied the motion for class certification on the ground of predominance of individual issues of fact.
At the hearing on the second motion for class certification, Boyd's counsel did make arguments directed to the merits of the underlying claims. Conceding as much, Boyd argues the trial court may consider the merits of the underlying claims at the class certification stage. In a limited sense, that is true: Issues affecting the merits of a case may be considered when they are "enmeshed with class action requirements" such as commonality, typicality, and adequacy of representation. (Linder, supra, 23 Cal.4th at p. 443; see Coopers & Lybrand v. Livesay (1978) 437 U.S. 463, 469, fn. 12 [57 L.Ed.2d 351, 98 S.Ct. 2454] ["`Evaluation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims. The typicality of the representative's claims or defenses, the adequacy of the representative, and the presence of common questions of law or fact are obvious examples . . . .'"]; Ali v. U.S.A. Cab Ltd. (2009) 176 Cal.App.4th 1333, 1346 [98 Cal.Rptr.3d 568].) "`[W]hen the merits of the claim are enmeshed with class action requirements, the trial court must consider evidence bearing on the factual elements necessary to determine whether to certify the class.'" (Bennett v. Regents of University of California (2005) 133 Cal.App.4th 347, 357 [34 Cal.Rptr.3d 579].)[4]
A plaintiff need not establish a likelihood of success on the merits to obtain class certification (Fireside Bank v. Superior Court (2007) 40 Cal.4th 1069, 1091-1092 [56 Cal.Rptr.3d 861, 155 P.3d 268]), and "[a]t a class certification hearing, the court should not make any determination of the merits or validity of the claim" (Bartold v. Glendale Federal Bank (2000) 81 Cal.App.4th 816, 829 [97 Cal.Rptr.2d 226]). "When the substantive theories and claims of a proposed class suit are alleged to be without legal or factual merit, the interests of fairness and efficiency are furthered when the contention is resolved in the context of a formal pleading (demurrer) or motion (judgment *1376 on the pleadings, summary judgment, or summary adjudication) that affords proper notice and employs clear standards." (Linder, supra, 23 Cal.4th at p. 440.)
Whether and to what extent a trial court may consider the merits of a case in ruling on a motion for class certification ultimately is beside the point. Although Boyd made arguments directed to the merits at the hearing on the second motion for class certification, it is illogical to presume, as Plaintiffs do, that the trial court must have based its decision to deny class certification on them, particularly when the court had expressed its concern over the predominance of individual factual issues.
The trial court said or did nothing to suggest it considered the merits of Plaintiffs' claims. To the contrary, the trial court stated, at the hearing, it was "being very careful to separate the issues of liability from the issues of certification." The trial court did not require Plaintiffs to prove any part of their case. Plaintiffs seize on this line from the order denying class certification"It is not clear, for the reasons stated by defendant, that the proposed classes are ascertainable"as demonstrating the trial court considered Boyd's arguments on the merits of Plaintiffs' claims. The phrase "reasons stated by defendant" in that passage refers to the issue of ascertainability of the class, not arguments on the merits.
In the minute order, the trial court expressed these permissible reasons for denying the second motion for class certification: "Moving party has not met its burden of establishing the requisites for class treatment. It is not clear, for the reasons stated by defendant, that the proposed classes are ascertainable. Additionally, it appears that individual questions of fact predominate, as set forth by defendant. These individual issues prevail over the common issues." It is the correctness of those stated reasons, and only those reasons, that we address. (Linder, supra, 23 Cal.4th at pp. 435-436.)

V.

Overview of Classes and Claims
We summarize the grounds for relief asserted for each subclass and explain the legal principles underlying Plaintiffs' claims, not to test the merits of those claims, but to provide a legal background to the analysis of ascertainability and commonality. Plaintiffs proposed three subclasses: (1) the Meal Break Class, (2) the Rest Break Class, and (3) the Overtime Class.

A. Meal Break Class

Plaintiffs assert, "[d]uring the entire alleged class period, [Boyd] did not provide an uninterrupted, off-duty, 30 minute meal period as required by law *1377 to any putative Class Members," but "required all Class Members to take an `on-duty' meal period each day they worked claiming that the nature of the job duties of putative Class Members qualified for on-duty meal periods."
Labor Code section 226.7 states: "(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission. [¶] (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."
The Industrial Welfare Commission (IWC) is empowered to formulate regulations known as wage orders governing employment in California. (Tidewater Marine Western, Inc. v. Bradshaw (1996) 14 Cal.4th 557, 561 [59 Cal.Rptr.2d 186, 927 P.2d 296].) IWC wage order No. 4-2001 (Wage Order No. 4-2001), codified at California Code of Regulations, title 8, section 11040, subdivision 11(A), governs an employer's obligation for providing meal breaks to hourly employees. Wage Order No. 4-2001 provides: "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an `on duty' meal period and counted as time worked. An `on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time." (Cal. Code Regs., tit. 8, § 11040, subd. 11(A), italics added; see also Bufil, supra, 162 Cal.App.4th at pp. 1197-1198.)

B. Rest Break Class

Plaintiffs assert that during the alleged class period, Boyd required its employees to remain on duty at all times and were not permitted to take uninterrupted, off-duty rest breaks.
"Concerning rest breaks, Wage Order No. 4-2001 states that every employer must `authorize and permit all employees to take rest periods . . . . The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose *1378 total daily work time is less than three and one-half (3½) hours.' ([Cal. Code Regs., tit. 8,] § 11040, subd. 12(A).)" (Bufil, supra, 162 Cal.App.4th at pp. 1198-1199.) "Employers who do not comply with the meal and rest break rules `shall pay' the employee one hour of pay at the employee's regular rate of compensation for each workday that the meal period or rest period is not provided. ([Cal. Code Regs., tit. 8,] § 11040, subds. 11(B), 12(B).)" (Id. at p. 1199.)
There does not appear to be an on-duty rest break exception as there is for meal breaks. The Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE) is empowered to enforce California's labor laws, including IWC wage orders. (Tidewater Marine Western, Inc. v. Bradshaw, supra, 14 Cal.4th at pp. 561-562.) A DLSE opinion letter, dated February 22, 2002, states, "there must be a net 10 minutes of rest provided in each `work period' and the rest period must be, as the language [of Wage Order No. 4-2001] implies, duty-free." (Dept. of Industrial Relations, DLSE Acting Chief Counsel Anne Stevason, opn. letter No. 2002.02.22, Rest Period Requirements (Feb. 22, 2002) p. 1 [as of June 24, 2010].)

C. Overtime Class

Boyd paid its employees an allowance for the cost of cleaning and maintaining uniforms and for the cost of gasoline. Plaintiffs assert those allowances are wages and must be included in calculating overtime wages. In addition, Plaintiffs assert an annual bonus paid by Boyd to employees who had been employed for 12 consecutive months was nondiscretionary and therefore must be included in the calculation of overtime wages.
Labor Code section 2802, subdivision (a) provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." One appellate court has held that payment to employees for work uniforms is a part of the employees' compensation and should be considered like any other payment of wages, compensation, or benefits. (In re Work Uniform Cases (2005) 133 Cal.App.4th 328, 338 [34 Cal.Rptr.3d 635].)
The DLSE, in an opinion letter dated March 6, 1991, stated: "Bonus payments, with certain exceptions[,] are included in the calculation of overtime. Bonuses based on incentive must be calculated into the employee's wages to determine the `regular rate of pay[.']" (Dept. of Industrial Relations, DLSE *1379 Chief Counsel H. Thomas Cadell, Jr., opn. letter No. 1991.03.06, Calculation of Regular Rate of Pay (Mar. 6, 1991) p. 1, fn. omitted [as of June 24, 2010] (Opinion Letter No. 1991.03.06).) The DLSE identified an exception to that rule: "Bonus payments which are discretionary or payments in the nature of gifts on special occasions, and contributions by the employer to certain welfare plans and payments made by the employer pursuant to a profit-sharing, thrift and savings plan . . . are not to be considered as part of the `regular rate of pay' for purposes of determining overtime compensation." (Id. at p. 1, fn. 1.)

VI.

Ascertainability
The purpose of the ascertainability requirement is to ensure notice is given to putative class members to whom a judgment in the class action would be res judicata. (Bufil, supra, 162 Cal.App.4th at p. 1206.) Class members are ascertainable when they may be readily identified without unreasonable expense or time by reference to official records. (Ibid.) "In determining whether a class is ascertainable, the trial court examines the class definition, the size of the class and the means of identifying class members." (Id. at p. 1207.)
We do not reach the issue of ascertainability for the Meal Break Class and the Rest Break Class because we conclude in part VII. those classes lack a predominance of common issues. We conclude the Overtime Class can be readily identified without unreasonable expense or time by reference to Boyd's payroll records. Employee paycheck stubs submitted in support of the second motion for class certification have separate entries for gasoline reimbursement and uniform cleaning reimbursement. Boyd's payroll records also show the amounts paid for gasoline reimbursements and uniform cleaning reimbursements.
As to annual bonuses, Plaintiffs are not asserting Boyd wrongly denied an employee an annual bonus. Whether the bonus has a subjective component is not relevant to the issue of ascertainability; instead, the issue is whether, as to those employees who received a bonus, the bonus must be included in calculating overtime wages. Those employees who received an annual bonus, and the amount of the bonus, may be determined readily from Boyd's payroll records. Accordingly, the Overtime Class is ascertainable.

*1380 VII.

Commonality

A. General Principles of Commonality

Commonality as a general rule depends on whether the defendant's liability can by determined by issues common to all class members: "`A class may be certified when common questions of law and fact predominate over individualized questions. As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages. . . . [T]o determine whether common questions of fact predominate the trial court must examine the issues framed by the pleadings and the law applicable to the causes of action alleged.'" (Ali v. U.S.A. Cab Ltd., supra, 176 Cal.App.4th at p. 1347, quoting Hicks v. Kaufman & Broad Home Corp. (2001) 89 Cal.App.4th 908, 916 [107 Cal.Rptr.2d 761].)
"In examining whether common issues of law or fact predominate, the court must consider the plaintiff's legal theory of liability. [Citation.] The affirmative defenses of the defendant must also be considered, because a defendant may defeat class certification by showing that an affirmative defense would raise issues specific to each potential class member and that the issues presented by that defense predominate over common issues. [Citations.]" (Walsh v. IKON Office Solutions, Inc. (2007) 148 Cal.App.4th 1440, 1450 [56 Cal.Rptr.3d 534].) We consider whether substantial evidence supported the trial court's finding on predominance, and draw inferences from the evidence in favor of the order on the second motion for class certification. (Sav-On, supra, 34 Cal.4th at p. 328.)

B. Meal Break Class

With respect to the Meal Break Class, we start by examining Plaintiffs' theory of legal liability. Plaintiffs assert Boyd is liable under Labor Code section 226.7 for requiring all putative class members to sign on-duty meal period agreements and to take on-duty meal breaks regardless of their job duties or conditions at their assigned posts.
Under the nature of the work exception, an employer is not required to provide off-duty meal breaks "when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to." (Cal. Code Regs., tit. 8, § 11040, subd. 11(A).) On-duty meal period agreements are permitted under Wage Order No. 4-2001, California Code of Regulations, *1381 title 8, section 11040, subdivision 11(A). Based on the nature of the work exception, Boyd argues its liability to the Meal Break Class depends on individual issues regarding the nature of the work at each post and whether each employee did in fact take on-duty meal breaks.
Boyd did have a uniform policy of requiring security guard employees to take on-duty meal breaks and did require them to sign on-duty meal break agreements. But demonstrably substantial evidence supported the trial court's finding that individual issues of fact predominate. The evidence submitted by Boyd showed the ability of each of its security guard employees to take an off-duty meal break depended on individual issues, such as the post to which the employee was assigned and whether under the specific circumstances each employee could be relieved to take a meal break.
Boyd presented evidence it provides security services at about 87 different locations, including residential communities, schools, housing complexes, entertainment facilities, retail centers, factories, highrise office buildings, highrise residential buildings, research and development facilities, hotels, convention centers, medical offices, hospitals, cemeteries, and construction sites. Boyd's evidence established the conditions and nature of security guard services vary from location to location and often from shift to shift. Declarations from current Boyd employees stated that, at locations where only a single guard worked, the employee may have to take an on-duty meal break, while at locations where several security guards worked, one employee could cover for another taking an off-duty meal break. Some security guard employees are able to take meal breaks during periods of inactivity ("I am able to take a meal period during the times when I am not actively performing any duties of a security officer"), while others are able to be relieved of duty to take meal breaks ("I am relieved of all duty for a meal period each day. I am free to leave the post to get food or I can remain on post while eating my meal"). Most declarants stated, "I have never been discouraged or prevented from eating a meal during any of the shifts I have worked by anyone, including anyone employed by Boyd," and most, if not all, declared he or she could not recall ever working a shift that did not have at least one period of rest for every three or four hours of work or working a shift during which he or she was "not able to spend a sufficient amount of time eating a meal."
At single guard posts, some security guards took off-duty breaks, while most others did not. On occasion, employees from Boyd's clients relieved a Boyd security guard employee for meal and rest breaks ("I am also relieved for a thirty-minute meal period each shift. Again, Monday through Friday I am relieved by Honda's in-house security and Saturday and Sunday I am relieved by other Boyd employees"), and on other occasions, the employee *1382 was relieved by the other guard stationed at the post ("I am able to take a meal period during the times when the other security guard on duty is able to man the post").
The ability of a Boyd security guard employee to take an off-duty meal break sometimes depended on whether the employee was training another employee ("When I am training another security officer we will relieve each other of all duty during meal and rest periods"). Some guards put out a sign saying "on a break" and took an off-duty break.
(10) Plaintiffs challenge this evidence, contending the declarations from Boyd's current employees are boilerplate or not credible because the employees face coercion. Those challenges go to the weight and credibility of the evidence, matters within the trial court's discretion. (Sav-On, supra, 34 Cal.4th at p. 334.) Plaintiffs also argue the nature of the work exception does not preclude class certification because it is Boyd's burden to prove the applicability of the exception. (11) But in determining whether common issues predominate, a defendant's affirmative defenses must be considered, and a defendant may defeat class certification by showing an affirmative defense raises issues specific to each potential class member. (Walsh v. IKON Office Solutions, Inc., supra, 148 Cal.App.4th at p. 1450.)
Both sides rely on Sav-On, supra, 34 Cal.4th 319, 324, in which the California Supreme Court upheld the trial court's order certifying a class in an action alleging the defendant misclassified salaried managers as exempt from the overtime laws and failed to pay overtime compensation owed to them. In support of class certification, the plaintiffs in Sav-On presented evidence that during the class period, the defendant classified all operating managers and assistant managers (salaried managers) as exempt from the overtime laws and failed to pay them overtime compensation, even though, pursuant to uniform company policies and practices, they consistently worked overtime hours and spent insufficient time on exempt tasks to be classified as exempt employees. (Id. at p. 327.) In opposing class certification, the defendant argued its liability, if any, for unpaid overtime compensation required making individual computations of the amount of time each class member spent working on specific tasks. (Id. at p. 328.)
The Supreme Court found the evidence in conflict, but, applying the standard of review, concluded the record contained substantial evidence that the defendant engaged in either a policy and practice of deliberately misclassifying class members, or that, owing in part to operational standardization, classification based on job descriptions (rather than actual tasks) resulted in "widespread de facto misclassification." (Sav-On, supra, 34 Cal.4th at p. 329.) Either theory (deliberate misclassification or de facto misclassification) was amenable to class treatment. (Ibid.)
*1383 Applying Sav-On to this case supports affirmance of the order denying class certification. We resolve any conflicts in the evidence in favor of the order denying class certification. Based on this evidence, and presuming in favor of the order denying class certification, "we cannot say it would be irrational for a court to conclude that, tried on plaintiffs' theory, `questions of law or fact common to the class [do not] predominate over the questions affecting the individual members' [citation]." (Sav-On, supra, 34 Cal.4th at p. 329.)
In the recent case of Arenas v. El Torito Restaurants, Inc. (2010) 183 Cal.App.4th 723, 726 [108 Cal.Rptr.3d 15], Division Five of the Second Appellate District of the Court of Appeal relied on Sav-On to affirm an order denying certification of a class of restaurant managers allegedly misclassified as exempt employees. In denying class certification, the trial court found the evidence showed that the tasks performed by restaurant managers, and the amount of time devoted to each task, varied widely from restaurant to restaurant depending on the volume of business and the nature of individual store operations. (Arenas v. El Torito Restaurants, Inc., supra, at pp. 729-730.) Applying Sav-On, the appellate court concluded substantial evidence supported the trial court's finding, and "this court cannot now substitute its own judgment." (Arenas v. El Torito Restaurants, Inc., supra, at p. 734.) "[H]aving credited defendants' evidence over plaintiffs', the trial court could reasonably conclude there was insufficient evidence of widespread misclassification ...." (Ibid.)
Similarly here, crediting Boyd's evidence over Plaintiffs', the trial court reasonably could conclude there was insufficient evidence of classwide denial of off-duty meal breaks and individual issues of liability predominate over common issues.
Plaintiffs argue common issues do predominate because application of the nature of the work exception depends on the nature of the employer's business overall and therefore can be decided on a classwide basis. Even if we were to agree with that proposition, substantial evidence would support the trial court's conclusion that individual liability issues predominate. A classwide determination that the nature of the work exception did not apply to security guards employed by Boyd would not in itself result in liability against Boyd. Liability would arise only when Boyd actually "fail[ed] to provide an employee a meal period in accordance with the applicable provisions of this order" (Cal. Code Regs., tit. 8, § 11040, subd. 11(B))that is, when a security guard employee actually takes an on-duty meal break under circumstances in which an off-duty meal break is required. The evidence submitted by Boyd supported a finding that whether a security guard employed by Boyd actually took on-duty meal breaks depended on a variety of individual factors not susceptible to common proof.
*1384 Plaintiffs rely on two casesWest v. Circle K Stores, Inc. (E.D.Cal., June 13, 2006, No. CIV. S-04-0438 WBS GGH) 2006 U.S.Dist. Lexis 42074 (West), and Bufil, supra, 162 Cal.App.4th 1193to support their contention common issues predominate. Both cases are distinguishable.
In Bufil, supra, 162 Cal.App.4th 1193, the plaintiff sought to represent a class of employees of a company operating 130 check-cashing stores, who allegedly were denied off-duty meal and rest breaks. The classes were very narrowly defined as employees for whom the defendant's records indicated a meal period had not been taken due to (1) single employee on duty in the store and (2) single employee on duty providing training to another employee. (Id. at p. 1201.) The Court of Appeal, reversing an order denying class certification, concluded the plaintiff had structured the case in such a way that whether the nature of the work exception authorized the employer to permit on-duty meal breaks was a legal question concerning the employer's liability. (Id. at pp. 1203-1204.)
Here, in contrast to Bufil, Plaintiffs structured the case in a way that defines the Meal Break Class very broadly to include all Boyd security guard employees in the class period. Boyd presented evidence supporting a finding that individual issues of liability would predominate notwithstanding.
In West, the district court certified a class of convenience store employees who sought recovery of damages for missed off-duty meal breaks. The court concluded resolution of the issue whether the nature of the work exception applied would involve the court in a determination of the merits because the nature of the work exception was intended to apply to the nature of the work in general, not to the circumstances "on any given shift." (West, supra, 2006 U.S.Dist. Lexis 42074 at p. *25.) The West court concluded that the issue whether a putative class member was actually permitted to take an off-duty break related only to damages. (Ibid.)
Here, unlike West, Boyd provided security guards to many different locations with different working conditions, requirements, and constraints. As a consequence, the issue whether a putative class member was actually permitted to take an off-duty meal break goes to liability, not damages. Whether Boyd's uniform policy of requiring all security guards to take on-duty meal breaks is in place or not, "courts must still ask where the individual employees actually spent their time." (In re Wells Fargo Home Mortgage (9th Cir. 2009) 571 F.3d 953, 959.)
Brown v. Federal Express Corp. (C.D.Cal. 2008) 249 F.R.D. 580 is instructive. In that case, the plaintiffs sought to certify a class of courier drivers who allegedly were denied meal and rest breaks in violation of the *1385 Labor Code. (Id. at p. 581.) They alleged the defendant had a policy of committing insufficient resources to its goal of making a large number of timely deliveries and, as a result, courier drivers were under pressure to make deliveries as quickly as possible and were unable to take required meal or rest breaks. (Id. at p. 582.) The district court denied class certification, finding, among other things, common issues did not predominate. (Id. at p. 583.) The court concluded the plaintiffs could prevail only by demonstrating the defendant's policies actually deprived them of meal and rest breaks. (Id. at p. 586.) The evidence showed the defendant had several classifications of drivers, each with different tasks and responsibilities. (Id. at pp. 586-587.) Drivers experienced different "ebbs and flows" in workload each day, "leading to a different analysis of when they might take breaks." (Id. at p. 586.) Drivers were subjected to different levels of monitoring and volumes of work, and drivers worked different routes, even within the same job classification. (Ibid.) Thus, "[a]lthough [the defendant] may have consistent policies that apply across job classifications, their impact on employees' ability to take breaks necessarily depends on each individual's job duties." (Ibid.) The plaintiffs proposed no method of common proof to establish the defendant's policies prevented drivers from taking required meal and rest breaks, regardless of each driver's individual circumstances. (Id. at p. 587.)
Boyd requests we take judicial notice of an opinion letter issued after the order denying the second motion for class certification.[5] Boyd argues Opinion Letter No. 2009.06.09 authorizes blanket on-duty meal agreements and supports its argument the nature of the work exception must be applied on a shift-by-shift basis. Plaintiffs oppose the request for judicial notice, arguing Opinion Letter No. 2009.06.09 was not, and could not have been, submitted to the trial court, and therefore constitutes facts outside the record. We construe Opinion Letter No. 2009.06.09 as a source of legal guidance, not as evidence, and find the opinion letter comes within Evidence Code section 452, subdivision (c).[6]
Although we grant the request for judicial notice, Opinion Letter No. 2009.06.09 does not influence our decision because it addressed meal period requirements in the very specific situation of employees engaged in the transportation of hazardous and explosive materials. (Opn. Letter No. 2009.06.09, supra, at p. 1.) Federal regulations governing carriers of *1386 hazardous and explosive materials require the driver to be near his or her truck at all times during the transport process. (Ibid.) The DLSE concluded, in very couched terms, "the application of these federal regulations may, in some circumstances, satisfy the requirement for an on-duty meal period under the applicable wage order that the nature of the driver's duties prevents the employee from being relieved of all duty." (Ibid., italics added.) The DLSE recognized an employer and an employee may enter into a single, blanket on-duty meal period agreement "so long as the conditions necessary to establish that the nature of the employee's work prevents the employee from being relieved of all duty are met for each applicable on-duty meal period taken." (Ibid.)
Plaintiffs argue that by requiring every security guard employee to sign an on-duty meal break agreement, and by maintaining a policy requiring every security guard employee to take on-duty meal breaks, Boyd treated the on-duty meal break exception as a classwide issue. An employer may assert, on the one hand, all employees fit within a certain job classification, yet argue, on the other hand, individual inquiry into each employee's tasks or circumstances is necessary to determine whether an employee actually fits within that classification. (Arenas v. El Torito Restaurants, Inc., supra, 183 Cal.App.4th at p. 735.) The legally relevant issue is whether common issues predominate.
Plaintiffs have cited the recent opinion of Jaimez v. Daiohs USA, Inc. (2010) 181 Cal.App.4th 1286 [105 Cal.Rptr.3d 443] (Jaimez), in which the Court of Appeal reversed an order denying certification of a putative class of sales representatives. Jaimez does not support reversal of the trial court's order denying the second motion for class certification in this case. The plaintiff in Jaimez asserted, among other things, the employer denied the class members uninterrupted meal breaks and rest breaks as required by Labor Code section 226.7 and failed to compensate class members for missed meal breaks and rest breaks. (Jaimez, supra, 181 Cal.App.4th at pp. 1291-1292.) The Court of Appeal concluded common issues predominated the meal break class because (1) the employer had a common practice of requiring the sales representatives to sign a manifest indicating they took a meal break in order to receive a meal break and (2) the employer had a common practice of deducting 30 minutes per shift for each sales representative, regardless whether the sales representative actually took a meal break. (Id. at p. 1304.)
Jaimez is significantly different from this case and addresses different liability issues. The nature of the work exception was not an issue in Jaimez. In Jaimez, the employer's liability for missed meal breaks could be established on a classwide basis with common proof of a practice of denying off-duty meal breaks while automatically deducting 30 minutes per shift for *1387 meal breaks. Here, in contrast, Boyd's liability for missed meal breaks depends on individual issues of the application of the nature of the work exception to numerous job sites and work conditions. There was no evidence presented that Boyd automatically deducted 30 minutes per shift for meal breaks while denying off-duty meal breaks to the putative class members.

C. Rest Break Class

Plaintiffs assert Boyd did not "authorize and permit all employees to take rest periods" as required by Wage Order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040, subd. 12(A)). Applying the relevant standard of review, we conclude as to the Rest Break Class that substantial evidence supported the trial court's finding that individual issues of liability predominate over common issues.
(12) There is no nature of the work exception for rest breaks. An employer must authorize and permit the break or pay the employee one hour of pay at the employee's regular rate for each work day the rest break is not provided. (Cal. Code Regs., tit. 8, § 11040, subd. 12(B).)
Boyd security guard employees were permitted to take a rest break "if there is nothing to do at that moment." Plaintiffs submitted declarations from 46 potential class members, each stating the employee was not given or was rarely given a rest break, or could not leave his or her post for a rest break except to use the bathroom.
Boyd submitted declarations from current employees. In some declarations, the employee stated he or she was relieved of duties in order to take off-duty rest breaks ("During each shift I am relieved of all duty by the Assistant Post Commander for two ten-minute rest breaks"), while in other declarations, the employee stated breaks were taken during periods of inactivity ("During each shift, there are periods during which I am not actively performing any duties of a security officer. These periods are times of rest for me"). In at least one declaration, the employee stated he determined, based on the circumstances, when to take a rest break, and "[w]hen these periods occur I place a sign out to inform visitors that I am on break and will be back shortly." Another employee declared she frequently took rest breaks at her post, but was able to "watch television, read magazines or books, or engage in other non-security-related activities."
The declarations submitted by Boyd are substantial evidence supporting a finding its liability based on failure to authorize and permit rest breaks is not susceptible to common proof. The evidence showed that Boyd had no formal policy denying off-duty rest breaks or requiring employees to waive them. Whether a Boyd security guard employee was able to take an off-duty rest *1388 break depended on a variety of individual circumstances. Thus, to determine whether and to what extent Boyd is liable for failing to authorize and permit off-duty rest breaks, individual determinations would have to be made for each security guard employee for each shift worked.
In Jaimez, supra, 181 Cal.App.4th at page 1304, the Court of Appeal concluded common issues predominated the rest break class because (1) the employer imposed a time schedule for making deliveries that made it extremely difficult to take rest breaks and (2) the employer never compensated for missed rest breaks. Boyd, unlike the employer in Jaimez, did not have a common policy of denying rest breaks and failing to pay for them. Substantial evidence in our case supported a finding that Boyd's liability for any failure to provide rest breaks depended on the circumstances at each post and during each shift.

D. Overtime Class

(13) As to the Overtime Class, we conclude the trial court abused its discretion to the extent it decided common issues did not predominate. The Overtime Class claims are governed by common legal principles set forth in the Labor Code and case authority.
The nature of, purpose of, entitlement to, and rate of reimbursement for both the uniform maintenance and gasoline reimbursements are the same for every Boyd security guard employee. Thus, whether those reimbursements must be included in calculating the overtime rate of pay can be decided on a classwide basis as a legal matter based on common proof. (See In re Work Uniform Cases, supra, 133 Cal.App.4th at p. 338.) Eligibility for recovery and damages, if any, would have to be shown on an individual basis, but that would not preclude class certification. (Sav-On, supra, 34 Cal.4th at p. 334.)
The issue whether the annual bonus must be included in calculating the overtime rate also can be decided on a classwide basis. The DLSE has determined that "[b]onus payments, with certain exceptions[,] are included in the calculation of overtime. Bonuses based on incentive must be calculated into the employee's wages to determine the `regular rate of pay[.']" (Opn. Letter No. 1991.03.06, supra, at p. 1, fn. omitted.) An exception to that rule is: "Bonus payments which are discretionary or payments in the nature of gifts on special occasions, and contributions by the employer to certain welfare plans and payments made by the employer pursuant to a profit-sharing, thrift and savings plan ... are not to be considered as part of the `regular rate of pay' for purposes of determining overtime compensation." (Id. at p. 1, fn. 1.)
The evidence presented in connection with the second class certification motion demonstrates it can be determined on a classwide basis whether the *1389 annual bonus paid to Boyd employees must be included in calculating the overtime rate of pay pursuant to DLSE guidelines. Boyd's companywide policies set forth objective standards for determining entitlement to an annual bonus. The Boyd employee handbook in effect between January 2001 and March 2006 provided that "[y]early bonuses shall be granted on the basis of the employee's length of employment. This period must be continuous from the last date of hire. Bonus pay shall be the straight time rate of pay at the time the bonus is given. [¶] A full-time employee, having completed one year of continuous service, shall receive a bonus equal to the average hours worked per week, not to exceed forty (40) hours." Boyd's employee handbook adopted in March 2006 provides: "Attendance Bonus: Hourly employees who maintain excellent attendance by reporting for duty at their assigned post on a daily basis will be rewarded with an Attendance Bonus.... The amount of the bonus will be determined by the following criteria: A full-time employee having completed one full year of continuous employment and having two (2) or less excused absences during a 12 month period beginning with the hire date will receive an amount equal to the average hours worked per week, not to exceed 40 hours, times their base rate of pay at the time of the payment."
In his declaration, Daniel Boyd explained Boyd's policy for awarding the annual bonus is based primarily, if not entirely, on objective factors. He declared: "Boyd has a general policy that employees who remain with the company for one year receive an annual attendance bonus. Prior to 2006, Boyd's employee handbook did not set forth any other requirements for receiving that bonus. However, the Branch Managers in each of Boyd's branches have always had the authority and discretion to, and did, utilize factors such as a poor record of attendance in deciding on the amount of the bonus.... [¶] ... Given this historic practice, Boyd included within its thorough revisions in 2006 to the 2001 employee handbook the additional guidelines concerning the annual attendance bonus. This was done to better apprise employees of the eligibility issues that were part of the bonus program." Daniel Boyd also declared, "[t]he conditions contained in the handbook are not exhaustive and Branch Managers are still free to consider additional circumstances when deciding on the amount of the bonus."
Whether and to what extent the bonus is discretionary is not an issue affecting class certification. Plaintiffs are not asserting any putative class member was wrongly denied a bonus. The degree of discretion that Boyd accords its branch managers is a factor in determining on a classwide basis whether the bonus must be included in calculating overtime rate of pay.
As noted, the order denying the second motion for class certification did not distinguish between the three theories of recovery asserted by Plaintiffs. *1390 The trial court offered no particular reason for denying certification of the Overtime Class other than the general pronouncement of lack of ascertainability and commonality. In its respondent's brief, Boyd argues only the merits of the Overtime Class claims and asserts, "[i]n over four years of litigation, [Plaintiffs] have never cited a case that supports their theory that expense reimbursement should be treated as wages." Boyd requests we take judicial notice of a document purported to be a DLSE policies and interpretations manual. The document is not authenticated and we decline to take judicial notice of it. We do not consider the merits of the Overtime Class claims.

DISPOSITION
The order denying class certification is reversed and remanded as it pertains to the Overtime Class. The trial court is directed to certify the Overtime Class on remand. In all other respects, the order denying class certification is affirmed. Because each party prevailed in part, in the interest of justice, no party shall recover costs incurred on appeal.
Rylaarsdam, Acting P. J., and Moore, J., concurred.
NOTES
[1] The eight subclasses were: (1) the "On-Duty Meal Break Class," (2) the "Overtime: Bonus Wages Class," (3) the "Overtime: Uniform/Mileage Reimbursement Class," (4) the "Unpaid Bonus Wage Class," (5) the "Itemized Wage Statement Class," (6) the mandated rest period class, (7) the "Waiting Time Penalty Wage Class," and (8) "the B&P [Business and Professions Code section] 17200 Class."
[2] Plaintiffs request we take judicial notice of a print copy of the tentative ruling posted online on the Orange County Superior Court Web site on January 15, 2009. Boyd does not object to the request for judicial notice "for the purpose of reviewing or `ascertaining the process by which a judgment has been reached,'" but does object to taking judicial notice of the tentative ruling "`for the purpose of impeaching' the order ultimately entered by the trial court." We grant the request for judicial notice pursuant to Evidence Code section 452, subdivision (d) (see Gerawan Farming, Inc. v. Lyons (2000) 24 Cal.4th 468, 483, fn. 3 [101 Cal.Rptr.2d 470, 12 P.3d 720]) and accord the tentative ruling the appropriate legal significance.
[3] Plaintiffs state the argument: "Because the oral argument was the only information presented to the trial court after its tentative ruling granting class certification was issued, it is logical to presume that the trial court based its denial of class certification on the merits arguments presented by [Boyd]." Later, Plaintiffs assert, "[t]he natural presumption is that the trial court's ruling is based primarily on [Boyd]'s merits-based arguments" and "[b]ecause it is clear that the trial court based its final order denying class certification on [Boyd]'s oral argument and that oral argument contained exclusively merit based arguments, the trial court erred in denying certification."
[4] Also, "[i]n an exceptional case, where the parties have had notice and an opportunity to brief the issue, class certification may be refused because a claim lacks merit as a matter of law." (Bennett v. Regents of University of California, supra, 133 Cal.App.4th at p. 355, citing Linder, supra, 23 Cal.4th at p. 443.)
[5] California's Department of Industrial Relations, DLSE Chief Counsel Robert R. Roginson, opinion letter No. 2009.06.09, Meal Periods for Fuel Carriers Subject to Federal Safety Regulations (June 9, 2009) (as of June 24, 2010) (Opinion Letter No. 2009.06.09).
[6] DLSE opinion letters, though not binding on courts, "`"constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." [Citation.]'" (Bell v. Farmers Ins. Exchange (2001) 87 Cal.App.4th 805, 815 [105 Cal.Rptr.2d 59].)