Filed 3/25/26  Janeke v. L.A. Dept. of Building and Safety CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| CHARLES JANEKE, | B338803 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23STCP01424) |
| v. | |
| LOS ANGELES DEPARTMENT OF BUILDING AND SAFETY, | |
| Defendant and Respondent; | |
| KYLE R. HASDAY | |
| Real Party in Interest and Appellant. | |

APPEALS from an order of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Affirmed.

Law Offices of J. Curtis Edmondson and J. Curtis Edmondson for Plaintiff and Appellant.

Sanders Coyner Cade and Stephen M. Sanders for Real Party in Interest and Appellant.

No appearance for Defendant and Respondent.

_____

Charles Janeke, representing himself, filed a petition for a writ of mandate seeking an order compelling the City of Los Angeles Department of Building and Safety to revoke permits issued for a neighbor's pool construction project. He later added the neighbor, Ryan Hasday, as an interested party to the litigation. Hasday moved for orders declaring Janeke a vexatious litigant and requiring him to post security to proceed with the writ action. After Janeke voluntarily dismissed the action, the superior court declared him a vexatious litigant under Code of Civil Procedure section 391, subdivision (b)(1),[1] determining he had commenced or maintained five litigations in propria persona during the past seven years that had been finally determined adversely to him. The court also entered an order prohibiting Janeke from filing in propria persona any new litigation without first obtaining leave of court.

Both parties appealed. Janeke contends the vexatious litigant determination is not supported by substantial evidence. He challenges two of the five litigations that the superior court counted as qualifying litigations under section 391, subdivision (b)(1): (1) the writ petition involving Hasday's permits and (2) an appeal in which Janeke obtained a $10,000 reduction of the judgment against him. In his cross-appeal, Hasday argues the superior court erred in not counting the Supreme Court's denial of Janeke's petition for review of the appeal as a qualifying litigation. Hasday also asserts he should have been awarded attorney's fees under section 1021.5.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

We reject Janeke's argument as to the underlying writ action but agree with his position that the favorable modification of the judgment precludes the prior appeal from being counted as a qualifying litigation under section 391, subdivision (b)(1). Nonetheless, we also agree with Hasday's argument regarding the subsequently denied petition for review, which in turn serves as the necessary fifth qualifying litigation. We reject Hasday's attorney's fees argument and affirm the vexatious litigant order.

## FACTUAL AND PROCEDURAL BACKGROUND

Janeke filed the underlying writ petition in May 2023. He alleged a contractor was performing major construction work on Hasday's property without a legally compliant building permit. Janeke further asserted the permits that had been acquired were based on factual and legal misrepresentations meant to circumvent applicable local law. Janeke sought orders compelling the Department of Building and Safety to revoke the permits and halt construction, noting his efforts to obtain such a response through calling and emailing the Department and visiting its office in person had been unsuccessful. Documents attached to the writ petition indicate Janeke had also sought assistance from the city attorney's office.

After the Department filed an answer to the writ petition, Janeke joined Hasday and the contractor as interested parties. Janeke also moved for summary judgment on his petition.

In September 2023, Hasday moved for an order declaring Janeke a vexatious litigant. Hasday contended Janeke should be found a vexatious litigant pursuant to section 391, subdivisions (b)(1), (b)(2), and (b)(3), which define a vexatious litigant as a self-represented litigant who has had at least five litigations

finally determined adversely to him within the past seven years (subd. (b)(1)), who repeatedly relitigates a claim or issue that has previously been finally determined against the same defendant (subd. (b)(2)), or who repeatedly files unmeritorious filings, conducts unnecessary discovery, or engages in other frivolous tactics (subd. (b)(3)).  Hasday requested that Janeke be required to provide security of $500,000 to proceed with his writ action under section 391.1 and that he be prohibited from filing any new litigation in propria persona without first obtaining leave from the presiding judge or justice under section 391.7.  Hasday also requested attorney's fees from any posted security, as sanctions under section 128.5, or as compensation for enforcing a public interest right under section 1021.5.[2]

In support of his motion, Hasday submitted evidence of 15 proceedings that he contended were qualifying litigations under section 391, subdivision (b)(1), because Janeke filed or maintained them as a self-represented litigant and they were finally decided adversely to him.[3]

---

[2]     Hasday also filed a special motion to strike (anti-SLAPP) against Janeke.  The superior court denied Hasday's motion after declaring Janeke a vexatious litigant.  That ruling is not a subject of this appeal.

[3]     Three days before the hearing on his vexatious litigant motion, Hasday requested judicial notice of numerous other documents regarding the purported qualifying litigations.  The superior court denied the requests, citing Janeke's objection to the requests as untimely and noting the requests had been made after briefing on the motion concluded and were not referenced in the briefing.  Hasday challenges the denial in his cross-appeal but does not describe how the documents prove additional

4

After Hasday filed his motion, Janeke retained counsel. Janeke then withdrew his summary judgment motion and voluntarily dismissed the writ action without prejudice.

In opposition to Hasday's vexatious litigant motion, Janeke argued Hasday had not carried his burden of proof, primarily arguing none of the purported qualifying litigations satisfied the standard under section 391, subdivision (b)(1). Janeke also objected to Hasday's evidence, which he claimed provided "an incomplete representation of the underlying cases."

In March 2024, after a hearing, the superior court granted Hasday's motion, finding Janeke was a vexatious litigant under section 391, subdivision (b)(1), because he had filed or maintained five actions as a self-represented litigant in the past seven years that were determined adversely to him. The court rejected Hasday's claim that Janeke was also a vexatious litigant under section 391, subdivisions (b)(2) and (b)(3), explaining Hasday had provided "no specific analysis of the facts to support his position" and thus failed to meet his burden as to those provisions. The court denied Hasday's request for a posted security and his related request for attorney's fees from the security, because Janeke had already dismissed the underlying action. The court also denied Hasday's requests for sanctions under section 128.5 and attorney's fees under section 1021.5, concluding he had not proved his entitlement to relief under either statute. The court entered a prefiling order under section 391.7 requiring Janeke to

---

qualifying litigations beyond the five the superior court found and the sixth potential qualifying litigation we consider here. Ultimately, we need not reach the issue because the vexatious litigant order can be affirmed without the documents for which Hasday sought judicial notice.

5

obtain leave of court before filing any future lawsuit in propria persona.

Both parties appealed.[4]

## DISCUSSION

A. *Vexatious Litigant Ruling*

Janeke challenges two of the five qualifying litigations for the superior court's vexatious litigant determination under section 391, subdivision (b)(1).[5] Not only does Hasday defend the court's reliance on those two, but in his cross-appeal, he argues the court erred in rejecting an additional qualifying litigation. We agree with Janeke that the court erroneously counted one of

---

[4] Although an order declaring a party a vexatious litigant is not itself appealable, we can review such an order in conjunction with a prefiling order under section 391.7, which is injunctive in nature and thus appealable under section 904.1, subdivision (a)(6). (See *In re Marriage of Deal* (2020) 45 Cal.App.5th 613, 618-619; *Luckett v. Panos* (2008) 161 Cal.App.4th 77, 90.)

[5] The other three qualifying litigations are actions Janeke filed in the Los Angeles County Superior Court: *Janeke v. Workmans Comp Commissioner* (2020; No. 19STCP04374); *Janeke v. Labor Commissioner* (2022; No. 22STCP01766); and *Janeke v. California State Franchise Board* (2023; No. 22STCP01984). Janeke challenges whether these three cases count as qualifying litigations only in his response to Hasday's cross-appeal argument that the superior court erred in not also declaring Janeke a vexatious litigant under section 391, subdivisions (b)(2) and (b)(3). Janeke forfeited these additional challenges in his appeal by not raising them in his opening brief. (*Koval v. Pacific Bell Telephone Co.* (2014) 232 Cal.App.4th 1050, 1063, fn. 12 ["An appellant's failure to raise an argument in its opening brief waives the issue on appeal."].)

6

the two litigations that he challenges, but we also conclude that Hasday provided sufficient evidence of an additional litigation that meets the test for a qualifying litigation. The net effect is that there are five qualifying litigations supporting the order declaring Janeke a vexatious litigant.

1.      *Applicable law and standard of review*

The vexatious litigant statutes, sections 391 through 391.8, "are designed to curb misuse of the court system by those persistent and obsessive litigants who, repeatedly litigating the same issues through groundless actions, waste the time and resources of the court system and other litigants." *(Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1169; accord, *Garcia v. Lacey* (2014) 231 Cal.App.4th 402, 406 (*Garcia*) ["The abuse of the system by such individuals 'not only wastes court time and resources but also prejudices other parties waiting their turn before the courts.' "]; *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 1005.)

The superior court found Janeke was a vexatious litigant under section 391, subdivision (b)(1). That provision defines a vexatious litigant as someone who "[i]n the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been . . . finally determined adversely to the person." (§ 391, subd. (b)(1).) "Litigation" is defined as "any civil action or proceeding, commenced, maintained or pending in any state or federal court." (*Id.*, subd. (a); see *Garcia, supra,* 231 Cal.App.4th at p. 406 ["[a] litigation includes an appeal or civil writ proceeding filed in an appellate court"]; accord, *In re Marriage of Kouvabina & Veltman* (2025) 115 Cal.App.5th 293, 298, 299 (*Marriage of Kouvabina*).) An

7

action is "within the ' "immediately preceding seven-year period" ' so long as it was filed or maintained during that period. [Citation.] The seven-year period is measured as of the time the [vexatious litigant] motion is filed." (*Garcia*, at p. 406, fn. 4; accord, *Karnazes v. The Lauriedale Homeowners Assn.* (2023) 96 Cal.App.5th 275, 280 (*Karnazes*).) "An action is 'finally determined adversely' to the litigant . . . if they do not win the action or proceeding they began—including appeals they have voluntarily dismissed and those involuntarily dismissed for procedural defects—and the 'avenues for direct review (appeal) have been exhausted or the time for appeal has expired.' " (*Karnazes*, at p. 280; accord, *Marriage of Kouvabina*, at p. 298; *Garcia*, at pp. 406-407 & fn. 5.)[6]

Hasday also requested that Janeke be required to provide security of $500,000 to proceed with his writ action under section 391.1, which provides that "a defendant may move the court . . . for an order requiring the plaintiff to furnish security or for an order dismissing the litigation pursuant to subdivision (b) of Section 391.3." (§ 391.1, subd. (a).) " 'Security' means an

---

[6] After a party is found to be a vexatious litigant under section 391, subdivision (b), the court "may, on its own motion or the motion of any party, enter a prefiling order which prohibits [the] vexatious litigant from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding justice or presiding judge of the court where the litigation is proposed to be filed." (§ 391.7, subd. (a); see *Shalant v. Girardi*, *supra*, 51 Cal.4th at p. 1170; *Marriage of Kouvabina*, *supra*, 115 Cal.App.5th at p. 298.) Such leave shall be granted "only if it appears that the litigation has merit and has not been filed for the purposes of harassment or delay." (§ 391.7, subd. (b).)

8

undertaking to assure payment, to the party for whose benefit the undertaking is required to be furnished, of the party's reasonable expenses, including attorney's fees and not limited to taxable costs, incurred in or in connection with a litigation instituted, caused to be instituted, or maintained or caused to be maintained by a vexatious litigant." (§ 391, subd. (c).)

The motion for an order to furnish security must be "supported by a showing[ ] that the plaintiff is a vexatious litigant and that there is not a reasonable probability that they will prevail in the litigation against the moving defendant." (§ 391.1, subd. (a).) If this showing is made, "the court shall order the plaintiff to furnish, for the benefit of the moving defendant, security in such amount and within such time as the court shall fix." (§ 391.3, subd. (a).) However, if "the court determines the litigation has no merit and has been filed for the purposes of harassment or delay, the court shall order the litigation dismissed." (*Id.*, subd. (b).) In addition, if security is ordered by the court but not furnished by the plaintiff, "the litigation shall be dismissed as to the defendant for whose benefit [the security] was ordered furnished." (§ 391.4.)

"To fulfill the statute's aim of protecting future potential litigants, the ability to declare an individual a vexatious litigant must survive even after the action has been dismissed." (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1025.)

"We review the trial court's order declaring a party to be a vexatious litigant for substantial evidence." (*Goodrich v. Sierra Vista Regional Medical Center* (2016) 246 Cal.App.4th 1260, 1265; see *Garcia, supra*, 231 Cal.App.4th at p. 407.) "Because the trial court is best suited to receive evidence and hold hearings on the question of a party's vexatiousness, we presume the order

9

declaring a litigant vexatious is correct and imply findings necessary to support the judgment." (*Golin v. Allenby* (2010) 190 Cal.App.4th 616, 636; see *Garcia*, at p. 407.)

        2.     *Underlying writ action*

Janeke challenges the superior court's determination that the underlying writ petition involving Hasday's building permits—an action Janeke voluntarily dismissed—was a qualifying litigation for purposes of declaring him a vexatious litigant under section 391, subdivision (b)(1). He does not dispute that a plaintiff's voluntary dismissal of his action can be considered a final adverse determination and thus a qualifying litigation. (See *Karnazes*, *supra*, 96 Cal.App.5th at p. 281; *Garcia*, *supra*, 231 Cal.App.4th at p. 406.) This is so because "[a]n action which is ultimately dismissed by the plaintiff, with or without prejudice, is nevertheless a burden on the target of the litigation and the judicial system, albeit less of a burden than if the matter had proceeded to trial. A party who repeatedly files baseless actions only to dismiss them is no less vexatious than the party who follows the actions through to completion. The difference is one of degree, not kind." (*Tokerud v. Capitolbank Sacramento* (1995) 38 Cal.App.4th 775, 779.)

However, Janeke contends the underlying writ action was improperly counted as a qualifying litigation in violation of his "absolute right to petition [the Department of Building and Safety] to ensure that proper building permits are issued." He asks us to carve out a new "exception" to section 391, subdivision (b)(1), because "a person should never have an impediment to petition a government agency to challenge a government building permit that affects his property interests under the vexatious litigant laws."

10

First, Janeke forfeited this argument by not raising it in the superior court. (*JJD-HOV Elk Grove LLC v. Jo-Ann Stores, LLC* (2024) 17 Cal.5th 256, 270.)

Second, "[a] court ' " 'must assume that the Legislature knew how to create an exception if it wished to do so.' " ' [Citation.] Where, as here, the Legislature has not created an exception, a court may not insert one into the statute." (*Mamer v. Weingarten* (2025) 108 Cal.App.5th 169, 174; accord, *Brown v. City of Inglewood* (2025) 18 Cal.5th 33, 46 ["Courts are not authorized to 'rewrite statutes.' "].) Janeke relies on *John v. Superior Court* (2016) 63 Cal.4th 91 (*John*) to contend that the "Supreme Court has allowed 'carve-outs' to the strict application of the vexatious litigant statutory language," and has approved "a broad, discretionary interpretation of the vexatious litigation statutes." Janeke misreads *John*. In *John*, the court held that section 391.7's prefiling requirements do not apply to a self-represented litigant previously declared a vexatious litigant seeking to appeal an adverse judgment in an action where he or she was the defendant. (*John*, at p. 93.) The court rejected the appellant's contrary interpretation of section 391.7, because "[c]hanging the language and the intent of the definitions in section 391 and the scope of amended section 391.7 in the statutory scheme to give it [appellant]'s expansive interpretation—defining appealing defendants as plaintiffs and responding plaintiffs as defendants—would ignore the statute's plain words and the 2011 amendment to section 391.7, as well as undermine its reasonable application." (*John*, at p. 100.) Thus, far from giving the vexatious litigation statutes an expansive interpretation, the court in *John* hewed carefully to the statutory language. Contrary to Janeke's contention, *John* does not give us

11

license to create an exception to the vexatious litigant scheme based on the particular subject matter at issue in his writ petition. (See *Shalant, supra*, 51 Cal.4th at p. 1176 ["we have no warrant to ignore section 391.7's unambiguous language"; "courts must observe the limits set by the applicable statutory scheme. If those limits are too confining, then it is the function of the Legislature, not the courts, to expand them."]; see, e.g., *Marriage of Kouvabina, supra*, 115 Cal.App.5th at p. 301 ["The Legislature could have exempted family law matters— as it exempted small claims actions in section 391(b)(1)—but it did not."].)

Third, to the extent Janeke impliedly suggests that the vexatious litigant statutes run afoul of the constitutional right to petition the government, that argument has been rejected. (See *Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 59 ["the vexatious litigant statute does not impermissibly 'chill' the right to petition and does not 'penalize' the filing of unsuccessful, colorable suits"].) As the *Wolfgram* court emphasized, "[t]he right to petition has never been absolute," and " '[b]aseless litigation is not immunized by the First Amendment right to petition.' " (*Id.* at pp. 56–58; see also *In re Marriage of Deal* (2020) 45 Cal.App.5th 613, 618 [prefiling order " 'does not deny the vexatious litigant access to the courts, but operates solely to preclude the initiation of meritless lawsuits and their attendant expenditures of time and costs' "].)[7]

---

[7] Janeke relies on *Payne v. Superior Court* (1976) 17 Cal.3d 908, 911 and *Shahbazian v. City of Rancho Palos Verdes* (2017) 17 Cal.App.5th 823, 826 to no avail. The cases respectively address the constitutional rights of access to the court and to petition the government, but neither addresses those rights in the context of a vexatious litigant ruling.

Because Janeke voluntarily dismissed the underlying writ action after filing it in propria persona within the applicable seven-year window, the superior court properly counted the action as a qualifying litigation under section 391, subdivision (b)(1).

3.     *The* Allen *appeal (B281155)*

Janeke also contends the superior court erred in counting *Janeke v. Allen* (Oct. 15, 2018, B281155) (the *Allen* appeal) as a qualifying litigation because the case was not an adverse determination for purposes of section 391, subdivision (b)(1).  We agree.

The *Allen* appeal arose from Janeke's lawsuit against a creditor, Juliette Allen and the Allen Family Trust (Allen), who he claimed had interfered with his efforts to obtain refinancing for an apartment building he owned.[8]  Represented by counsel in the trial court, Janeke alleged causes of action for fraud, negligent misrepresentation, unfair business practices, slander of title, quiet title, breach of contract, and intentional and negligent infliction of emotional distress.  Allen cross-complained, alleging Janeke failed to make payments due to her under Janeke's reorganization plan that had been approved by the bankruptcy court.  Allen sought $180,000 in unpaid principal, acknowledging Janeke had made two payments of $10,000 toward the $200,000 principal owed.  (*Janeke v. Allen* (Oct. 15, 2018, B281155) [nonpub. opn.].)

---

[8]     We take judicial notice of the Court of Appeal's unpublished opinion (*Janeke v. Allen* (Oct. 15, 2018, B281155) [nonpub. opn.]), as a court record.  (Evid. Code, § 452, subd. (d)(1); *Marriage of Kouvabina, supra,* 115 Cal.App.5th at p. 298, fn. 1.)

13

Allen moved for summary judgment on Janeke's claims and her cross-complaint. The trial court granted summary judgment to Allen in all respects and entered a judgment in her favor, which included $190,000 for unpaid principal. (*Janeke v. Allen* (Oct. 15, 2018, B281155) [nonpub. opn.].)

While representing himself, Janeke appealed and then maintained the appeal for more than six months before hiring counsel. The Court of Appeal affirmed the judgment, agreeing with the trial court that "Allen has established that Janeke cannot prevail on any cause of action in his complaint, and that Allen is entitled to judgment as a matter of law," and also finding Allen was "entitled to judgment in her favor on her cross-complaint." (*Janeke v. Allen* (Oct. 15, 2018, B281155), at *7, *10 [nonpub. opn.].) However, the court agreed with Janeke's argument that the trial court erred in calculating the amounts Janeke owed to Allen. The court concluded: "In Allen's cross-complaint, she initially pleaded that Janeke made two $10,000 payments which she credited against the $200,000 principal, leaving a balance of $180,000. In her motion for summary judgment, she argued that she instead credited one of those payments to a different loan (made to help Janeke pay his bankruptcy counsel), so she was entitled to the principal balance of $190,000. This recharacterization of one of the payments is in direct contradiction of the allegations and prayer of Allen's cross-complaint. Moreover, there is no evidence supporting it. Allen did not, for example, include any documentation reflecting the terms of repayment of the $10,000 loan, which would allow her to credit one of the $10,000 payments against it. Under the circumstances, Allen has pleaded and proven a claim for $180,000, not $190,000, and the trial court's judgment for the

14

larger amount must be reduced." (*Id.* at *10.)  The court's disposition was as follows:  "The judgment in favor of Allen is modified in the following respect.  Judgment should be in the principal amount of $180,000, not $190,000.  The matter is remanded to the trial court for a modification of the interest awarded.  In all other respects, the judgment is affirmed.  Janeke shall pay Allen's costs on appeal." (*Id.* at *11.)

Janeke argues the Court of Appeal's modification of the judgment in a way that benefited him suffices to render the *Allen* appeal a non-qualifying litigation.  Acknowledging "[i]t may not be the best result," Janeke asserts the disposition of the *Allen* appeal was "not adverse when [he] walks out of this Court in better monetary shape than when he walked in."  For his part, Hasday argues the Court of Appeal's decision was "plainly adverse" to Janeke because it affirmed summary judgment in Allen's favor on both Janeke's claims and Allen's cross-claims and determined Janeke still owed $180,000 in unpaid principal.[9]  Hasday contends the superior court properly exercised its discretion to "pick the 'winner' " of the *Allen* appeal and it picked Allen.

The vexatious litigant statutes do not define the phrase "determined adversely," as it is used in section 391, subdivision (b)(1).  Case law offers little more than the often repeated line that "[a] litigation is finally determined adversely to a plaintiff if he does not *win* the action or proceeding he began." (*Garcia, supra,* 231 Cal.App.4th at p. 406, italics added; accord, *Marriage*

---

[9]     Hasday also contends Janeke forfeited this argument by not raising it in the superior court, but the issue of whether the *Allen* appeal constituted an adverse determination was addressed by both parties at the hearing on Hasday's motion.

*of Kouvabina, supra*, 115 Cal.App.5th at p. 298 ["The litigation is 'finally determined adversely' if the person does not win and 'avenues for direct review (appeal) have been exhausted or the time for appeal has expired.' "].)  But we disagree with Hasday's contention that the disposition of the *Allen* appeal should be counted as a determination adverse to Janeke because there could be only one "winner."

Even if Janeke lost the *Allen* appeal in almost every respect—and he concedes as much—he prevailed in obtaining a $10,000 reduction in the judgment against him.  On that argument, he won.  To ignore that part of the outcome and conclude that the *Allen* appeal was an adverse determination within the meaning of section 391, subdivision (b)(1), would be inconsistent with the purpose of the vexatious litigant statutes to curb *meritless* litigation and all the negative consequences it brings.  (See *Morton v. Wagner* (2007) 156 Cal.App.4th 963, 970-971 ["Any determination that a litigant is vexatious must comport with the intent and spirit of the vexatious litigant statute.  The purpose of which is to address the problem created by the persistent and obsessive litigant who constantly has pending a number of groundless actions and whose conduct causes serious financial results to the unfortunate objects of his or her attacks and places an unreasonable burden on the courts."]; accord, *Garcia, supra*, 231 Cal.App.4th at p. 406 [vexatious litigant statutes provide "a 'means of moderating a vexatious litigant's tendency to engage in meritless litigation' "].)  Because the Court of Appeal agreed with at least one of Janeke's arguments and reduced the judgment against him, the *Allen* appeal was not an adverse determination under section 391,

16

subdivision (b)(1), and cannot be counted as a qualifying litigation.

4.      *The* Allen *petition for review (S252798)*

Janeke's petition requesting review by the Supreme Court of the Court of Appeal's *Allen* decision is another story.  In his cross-appeal, Hasday contends the superior court erred in not counting that petition for review, which the Supreme Court denied, as a qualifying litigation.  Janeke argues the denial of a petition for review is not a "*final* determination of litigation" under section 391, subdivision (b)(1).  Both sides assert their position is supported by *Fink v. Shemtov* (2010) 180 Cal.App.4th 1160 (*Fink*), which the superior court also cited in rejecting Hasday's position.  *Fink* does not concern the denial of a petition for review by the Supreme Court, but its analysis is helpful in determining whether a denied petition for review counts as a qualifying litigation.

In *Fink*, the court considered whether the summary denial of a writ petition filed in the Court of Appeal could constitute a final determination of litigation within the meaning of section 391, subdivision (b)(1).  (*Fink, supra,* 180 Cal.App.4th at p. 1172.)  The *Fink* court distinguished " 'writ petitions challenging pretrial superior court rulings that could also be reviewed on appeal from the judgment ultimately entered in the action' from 'situations in which a writ petition was the only authorized mode of appellate review.' "  (*Ibid.*, quoting *Leone v. Medical Board* (2000) 22 Cal.4th 660, 670.)  The court held that only a summary denial of the latter type of writ petition would constitute a qualifying litigation.  (*Fink,* at pp. 1172-1173.)  The court explained that if a writ petition challenges a pretrial issue that could also be reviewed from a later judgment, the appellate court " ' "does not

17

take jurisdiction over the case" ' " and its summary denial of the petition "cannot constitute a *final* determination of litigation within the meaning of section 391, subdivision (b)(1)." (*Id.* at p. 1172.) On the other hand, where a writ petition is the "*exclusive* means of obtaining appellate review," an appellate court's summary denial "for lack of substantive merit or for procedural defect . . . fulfills its duty to exercise the appellate jurisdiction vested in it by the state Constitution's appellate jurisdiction clause" and is thus "properly considered a final determination of litigation for purposes of qualifying for vexatious litigant status." (*Id.* at pp. 1172-1173; accord, *Marriage of Kouvabina, supra*, 115 Cal.App.5th at p. 298; *Karnazes, supra*, 96 Cal.App.5th at p. 280.)

A petition for review in the Supreme Court is different in some key respects from the petitions for writ of mandate discussed in *Fink*. When a petitioner seeks a writ of mandate in the Court of Appeal and the court finds the petitioner has no other plain, speedy, and adequate remedy in the ordinary course of law, the court "must" issue the writ if it has merit. (§ 1086; see *Eshagian v. Cepeda* (2025) 112 Cal.App.5th 433, 453 [" 'When an extraordinary writ proceeding is the only avenue of appellate review, a reviewing court's discretion is quite restricted' "].) In contrast, the Supreme Court has broad discretion to grant or deny a petition for review (Cal. Rules of Court, rule 8.500(b) ["The Supreme Court *may* order review of a Court of Appeal decision . . . ."], italics added), and its grounds for taking review are limited (*ibid.*).[10] Thus, the denial of a petition for review " 'is

_____

10      (See Cal. Rules of Court, rule 8.500(b) ["The Supreme Court may order review of a Court of Appeal decision: (1) When

18

not an expression of the Supreme Court on the merits of the cause.' " (*Trope v. Katz* (1995) 11 Cal.4th 274, 287, fn. 1.)

Notwithstanding these differences, the *Fink* analysis supports the conclusion that the California Supreme Court's denial of a petition for review may count as a qualifying litigation. Like a petition for extraordinary writ relief filed in the Court of Appeal, a petition for review filed in the Supreme Court is a "civil action or proceeding . . . pending in any state . . . court," and as such, it falls within the definition of a "litigation" under section 391, subdivision (a). Filing a petition for review in the Supreme Court is the "*exclusive* means of obtaining appellate review" of a final Court of Appeal decision (*Fink*, *supra*, 180 Cal.App.4th at p. 1172); there will be no subsequent opportunity for review by the Supreme Court, and the Supreme Court exercises its appellate jurisdiction when it considers a petition for review, determines the petition does not meet the narrow bases for review, and issues a denial.[11] Further, the Supreme Court's denial of such a petition—absent a timely writ of certiorari filed in the United States Supreme Court—is final. (See Cal. Rules of Court, rule 8.532(b)(2) [Supreme Court decisions that are final on filing include "[t]he denial of a petition for review of a Court of Appeal decision"].) Finally, a denial is not

---

necessary to secure uniformity of decision or to settle an important question of law; (2) When the Court of Appeal lacked jurisdiction; (3) When the Court of Appeal decision lacked the concurrence of sufficient qualified justices; or (4) For the purpose of transferring the matter to the Court of Appeal for such proceedings as the Supreme Court may order."].)

[11] A party (including a pro per) who chooses to file a petition for review in the Supreme Court must be charged with knowledge of the limited bases for Supreme Court review. (*Ante*, fn. 10.)

19

a "win" for the party requesting review, and thus it is an adverse determination within the meaning of section 391, subdivision (b)(1). (See *Marriage of Kouvabina*, *supra*, 115 Cal.App.5th at p. 298 [litigation is "determined adversely" against a party if the party "does not win"].)

Section 391 imposes no requirement that a proceeding be resolved on the "merits" to qualify as a final, adverse determination of litigation. Nor does it matter that the Supreme Court can rule on a petition for review without participation from a responding party. (See Cal. Rules of Court, rule 8.500(a)(2) ["A party *may* file an answer responding to the issues raised in the petition."], italics added.) As discussed, voluntary dismissals, both with and without prejudice, are properly counted as qualifying litigations—no matter whether the plaintiff's complaint had merit or whether a defendant ever had to participate in the litigation.[12] (See *Karnazes*, *supra*, 96 Cal.App.5th at p. 281.) If a party files a petition for review but then *voluntarily dismisses* the petition before the Supreme Court takes any action, the proceeding would count as a qualifying litigation. There is thus no logical basis to conclude that the Supreme Court's *denial* of a petition for review—which requires the expenditure of some resources by the Court—should not count.

Counting a denial of a petition for review as a qualifying litigation is also consistent with the underlying purpose of the

---

[12] As another example, even where only a notice of appeal has been filed, the dismissal of the appeal as untimely can constitute a final adverse determination against the would-be appellant. (See *Fink*, *supra*, 180 Cal.App.4th at pp. 1173-1174 [appeal dismissed as untimely counts as qualifying litigation].)

vexatious litigant statutes. The filing of a petition for review that is ultimately denied by the Supreme Court still demands judicial resources and delays justice for others. (See *In re Marriage of Deal, supra*, 45 Cal.App.5th at p. 618 [" 'The vexatious litigant statute (§ 391 et seq.) was enacted "to curb misuse of the court system' " by " 'persistent and obsessive' litigants." ' "]; *In re R.H.* (2009) 170 Cal.App.4th 678, 703 ["[T]he vexatious litigant law exists not only to help defendants but to curb misuse of the court system. . . . Such repeated misuse [by vexatious litigants] results in a useless diversion of the appellate court's attention and prejudices other appellate parties, many of whom wait years for resolution of bona fide disputes. Similarly, our appellate system and our state's taxpayers are damaged by what amounts to a waste of the appellate court's time and resources."], disapproved on other grounds by *John, supra*, 63 Cal.4th at p. 99, fn. 2.)

Accordingly, the Supreme Court's denial of Janeke's petition for review of the Court of Appeal's *Allen* decision was a final determination of litigation adverse to Janeke that is properly counted as one of the five qualifying litigations supporting the vexatious litigant order under section 391, subdivision (b)(1). The court properly designated Janeke as a vexatious litigant and entered a pre-filing order against him.

B.    *Hasday's Request for Attorney's Fees*

Hasday contends the superior court erred when it denied his request for attorney's fees under section 1021.5.

1.    *Applicable law and standard of review*

The vexatious litigant statutes authorize an award of attorney's fees from security posted by a vexatious litigant who proceeds to lose the action. (*Singh v. Lipworth* (2005)

21

132 Cal.App.4th 40, 43-44, 47; see §§ 391, subd. (c), 391.3.)  If no security is posted, however, the statutes do not otherwise authorize an award.  (*Luckett v. Keylee* (2007) 147 Cal.App.4th 919, 925-926.)  Courts have pointed to contempt and sanctions statutes, including section 128.5, as alternative bases for recovery of attorney's fees under such circumstances.  (See *Luckett*, at p. 926.)  But no published opinion has suggested section 1021.5 provides a basis for an attorney fee award in the event a vexatious litigant dismisses an action before a court has ordered it to furnish security.

" 'Section 1021.5 codifies California's version of the private attorney general doctrine, which is an exception to the usual rule that each party bears its own attorney fees.  [Citation.]  The purpose of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.' " (*City of Oakland v. Oakland Police & Fire Retirement System* (2018) 29 Cal.App.5th 688, 697 (*City of Oakland*); see *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1224 [section 1021.5 is aimed at "solving the problem of the nonaffordability of litigation that will benefit the public but cannot pay its own way"].)  As relevant here, section 1021.5 authorizes an award of attorney's fees "to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out

22

of the recovery, if any."  The party seeking an award under section 1021.5 has the burden to establish each prerequisite is met.  (*Samantha C. v. State Dept. of Developmental Services* (2012) 207 Cal.App.4th 71, 78.)

We generally review rulings on requests under section 1021.5 for abuse of discretion.  (*Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1213; *City of Oakland*, *supra*, 29 Cal.App.5th at p. 698.)

> 2.  *The court did not abuse its discretion in denying Hasday's request for attorney's fees under section 1021.5*

In his vexatious litigant motion, Hasday asked the court to order Janeke to post a $500,000 security under section 391.3 to cover Hasday's attorney's fees to litigate the underlying writ petition.  However, Janeke dismissed that writ action prior to the hearing on the vexatious litigant motion, and thus the court did not order Janeke to post any security.  Hasday then filed a supplemental brief supporting his motion, in which he requested the court impose sanctions on Janeke pursuant to section 128.5 and award attorney's fees under section 1021.5.  Hasday's argument as to section 1021.5 consisted of a single sentence: "Respondent also seeks recovery of reasonable attorney fees incurred for the enforcement of an important right affecting the public interest to [section] 1021.5, particularly in light of the dismissal of the Petition against the City after the filing of the Motion."  In his reply brief, Hasday asserted the superior court should overrule Janeke's objection to his request under section 1021.5 as "vague, ambiguous, and lacking foundation" but did not provide further argument as to that request.

23

The superior court denied the requests for sanctions under section 128.5 and attorney's fees under section 1021.5.[13] As to section 1021.5, the court explained that Hasday had not met his burden to prove he was entitled to an award under that statute.

The superior court did not abuse its discretion in denying Hasday's unsupported and conclusory request for attorney's fees under section 1021.5. While Hasday contends the court erred in denying him an opportunity to fully brief the issue, he does not point to where in the record such a specific request was ever made. The most the record shows is a request from *Janeke* to further brief the issue if the court were to find Hasday was entitled to fees under the statute. Under these circumstances, Hasday has not demonstrated error.

Even considering arguments he presented for the first time on appeal, Hasday provides no authority or convincing reason supporting the use of section 1021.5 to recover attorney's fees following a successful vexatious litigant motion. (See *People ex rel. Brown v. Tehama County Board of Supervisors* (2007) 149 Cal.App.4th 422, 450 ["section 1021.5 does not provide any basis for a court to award attorney fees for vexatious litigation or obdurate behavior"].)

Even if section 1021.5 could conceivably apply in such a scenario, Hasday has not demonstrated he meets the requirements of section 1021.5. " ' " 'An award on the "private attorney general" theory is appropriate when the cost of the claimant's legal victory transcends [the claimant's] personal interest, that is, when the necessity for pursuing the lawsuit

---

[13]     Hasday does not challenge the denial of his request for sanctions under section 128.5.

24

placed a burden on the plaintiff "out of proportion to his [or her] individual stake in the matter." [Citation.]' " [Citation.] "This requirement focuses on the financial burdens and incentives involved in bringing the lawsuit." ' " (*City of Oakland*, *supra*, 29 Cal.App.5th at p. 699.) Although Hasday contends "in this action [he] acted solely in the public interest, in an action brought against a public agency, which directly benefited" from Hasday's vexatious litigant motion, Hasday personally benefited from the filing of the vexatious litigant motion. The filing of that motion and request for an order that Janeke furnish security caused Janeke to dismiss the writ petition that threatened to hold up the building permits for Hasday's project. Thus, the court did not abuse its discretion in declining to award Hasday fees under section 1021.5.

## DISPOSITION

The order declaring Janeke a vexatious litigant and requiring he obtain leave of court before filing future lawsuits in propria persona is affirmed. The parties shall bear their own costs on appeal.

STONE, J.

We concur:

FEUER, Acting P. J          GIZA, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25